1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RICKI CHIPMAN,

11           Plaintiff,                    No. 2:11-cv-2770-GEB-EFB PS

12       vs.

13   MARCIA F. NELSON, M.D.; ENLOE
     MEDICAL CENTER; JOSEPH M.
14   MATTHEWS, M.D.; GERARD
     VALCARENGHI, M.D.; DALE J.            ORDER AND
15   WILMS, M.D.; DINESH VERMA, M.D.;      FINDINGS AND RECOMMENDATIONS
     ATTILA KASZA, M.D.; JUDGE
16   BARBARA S. ROBERTS; CHRISTI
     CALKINS; JOANIE O. MAHONEY;
17   JANE STANSELL; JULIE CLARK-MARTIN;
     DIRK POTTER; BRENDA BOGGS-HARGIS;
18   KINDRED HOSPITAL – FOLSOM;
     EVA LEW, M.D.; MARK AVDALOVIC, M.D.,
19
             Defendants.
20   _____/

21         This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to

22   Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  All of the

23   named defendants have moved to dismiss plaintiff's first amended complaint in one form or

24   another.  Specifically, defendants Enloe Medical Center ("EMC"), Brenda Boggs, and Marcia F.

25   Nelson, M.D., move to dismiss plaintiff's first amended complaint under Federal Rule of Civil

26   Procedure ("Rule") 12(b)(6) and, in the alternative, move for a more definite statement under

1

1    Rule 12(e), Dckt. No. 76, as do defendant Joseph M. Mathews, M.D.,[1] Dckt. No. 79; defendant

2    Julie Clark-Martin, Dckt. No. 80; defendants Gerard R. Valcarenghi, M.D., Dale J. Wilms, M.D.,

3    and Dinesh Verma, M.D., Dckt. No. 83; defendants Christi Calkins and Joanie O'Mahoney,

4    Dckt. No. 85; defendants Eva Lew, M.D. and Mark Avdalovic, M.D., Dckt. No. 87; and

5    defendant the Orange County dba Kindred Hospital Sacramento ("Kindred"), Dckt. No. 95.

6    Defendant Judge Barbara S. Roberts moves to dismiss for failure to state a claim under Rule

7    12(b)(6) and for lack of jurisdiction under Rule 12(b)(1).  Dckt. No. 77.  Defendant Attila Kasza,

8    M.D., moves to dismiss for failure to state a claim *and* for failure to join a necessary party and,

9    in the alternative, moves for a more definite statement.  Dckt. No. 78.  Defendant Dirk Potter,

10   Dckt. No. 94, and defendant Jane E. Stansell, Dckt. No. 96,[2] move to dismiss the first amended

11   complaint for failure to state a claim and also move to strike under the anti-SLAPP (Strategic

12   Lawsuit Against Public Participation) provisions set forth in California Civil Procedure Code

13   section 425.16.[3]  Plaintiff opposes all of the motions.  Dckt. Nos. 99-110.

14        For the reasons stated herein, plaintiff's entire first amended complaint should be

15   dismissed under Rule 12(b)(6) for failure to state a claim.[4]

16

17        [1] Defendant Matthews indicates in the caption of his motion that he also moves to strike
plaintiff's request for punitive damages under Rule 12(f). Dckt. No. 79.  However, Matthews does
18   not address the motion to strike anywhere else in his motion, nor does he provide any basis for this
court to strike any portion of plaintiff's first amended complaint.  Moreover, "Rule 12(f) does not
19   authorize district courts to strike claims for damages on the ground that such claims are precluded
as a matter of law."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010).  Therefore,
20   Matthews' purported motion to strike, if any, is denied without prejudice.

21        [2] Defendant Stansell also moves for an order pursuant to California Code of Civil Procedure
section 425.16 for mandatory attorney fees and costs with the amount to be determined by separate
22   motion.  Dckt. No. 96 at 2.

23        [3] Defendants EMC, Boggs, Nelson, and Clark-Martin also argue that they are protected from
some of plaintiff's claims by virtue of California's anti-SLAPP statute, but they seek dismissal under
24   Rule 12(b)(6).  Dckt. No. 76 at 12-14; Dckt. No. 80 at 10.

25        [4] Because plaintiff's entire complaint should be dismissed for failure to state a claim, the
court need not address defendants' motions for a more definite statement or defendant Kasza's
26   motion to dismiss for failure to join a necessary party.

## I.   FACTUAL ALLEGATIONS[5]

Plaintiff, Ricki Chipman, alleges that she is a registered nurse in Washington State, and is the eldest daughter and heir of Mary A. Martin ("decedent"), who died on October 20, 2010. First Am. Compl. ("FAC"), Dckt. No. 74, at 3.[6]  Prior to decedent's death, decedent suffered from Parkinsonism and early-stage dementia, and was being treated at EMC.  *Id*. at 3-4.  Because decedent was unable to make health care decisions on her own, plaintiff alleges that decedent's family designated plaintiff as the "Medical Decision Maker" in a signed and witnessed document.  *Id*.  Plaintiff alleges that "defendants" did not comport with health care informed consent standards for medical procedures, and when plaintiff disagreed with EMC staff on decedent's treatment plan, "a confrontational environment ensued, and the EMC medical staff no longer honored medical decision-making by plaintiff."  *Id*. at 4.

Plaintiff alleges that EMC, its doctors, and its staff "conspired to remove plaintiff without sufficient or defensible cause as the medical decision-maker for [decedent]."  *Id.,* Pl.'s Ex. A. According to plaintiff, defendants Matthews (a surgeon and member of the Board of Trustees of EMC), Nelson (decedent's personal physician and Vice President of Medical Affairs for EMC), Clark-Martin (EMC's Litigation Prevention Attorney), and Boggs (EMC's Risk Manager) falsely accused plaintiff and her family of elder abuse, physical violence, and of interfering with EMC doctors and staff.  *Id*., Pl.'s Ex. B.  Based on those accusations, on July 2, 2010, EMC restricted plaintiff's family's visitation rights to 15 minutes per hour between the hours of 10:00

---

[5] Throughout her various oppositions, plaintiff attempts to inject facts and claims for relief that were not alleged in the first amended complaint.  This court will only consider those facts and causes of action which were actually alleged in the first amended complaint, those exhibits attached to the first amended complaint, and those facts which the court judicially recognizes.  *Blue Dolphin Charters, Ltd. v. Knight & Carver Yachtcenter, Inc.*, 2012 WL 1185945 (S.D. Cal. Apr. 9, 2012) (citing *Hal Roach Studios Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1554 (9th Cir. 1989)) (holding that, in considering a motion to dismiss, the court must not go beyond the pleadings, certain authentic attached exhibits, and those other materials which the court judicially recognizes).

[6] The page numbers used herein refer to the page numbers assigned by the court's case management and electronic case filing (CM/ECF) system.

a.m. and 9:00 p.m., with no more than one visitor at a time. *Id*. at 4-5, Pl.'s Ex. C  Plaintiff

alleges that this "was intentionally designed by defendants to reduce scrutiny" on EMC's

practices and to circumvent the proper process of obtaining informed consent from the

designated health care decision-maker. *Id*. at 5.  Plaintiff further alleges that if the allegations of

elder abuse were true, defendants were required to report it, but no agency contacted her about

the purported charges.[7]  *Id*.  Accordingly, plaintiff contends the accusations were intentionally

defamatory and false, and were never reported. *Id*.

Plaintiff further alleges that defendants filed a Strategic Lawsuit Against Public

Participation (hereafter "SLAPP") in order to circumvent informed consent. *Id*.  Specifically,

plaintiff alleges that on July 7, 2010, defendants filed a petition for a temporary restraining order

("TRO") and appointment of a temporary guardian for decedent, predicated on defamatory and

false accusations. *Id*. at 6, Pl.'s Ex. D.  Although it is unclear who precisely filed for injunctive

relief as plaintiff's first amended complaint merely states that "defendants" filed the petition,

plaintiff alleges that the petition included false statements from defendants Clark-Martin and

Boggs. *Id*.  The case was first heard as an ex parte motion in Butte County Superior Court by

defendant Judge Barbara Roberts. *Id*.  Plaintiff alleges that she was unaware of this hearing. *Id*.

During the hearing, Judge Roberts appointed defendants Calkins and O'Mahoney as temporary

guardians for decedent conservators and defendant Stansell as an attorney to represent decedent.

*Id*.  Plaintiff contends that those appointed individuals remained as decision-makers for decedent

until her wrongful death. *Id*.  Plaintiff contends that defendants Nelson, EMC, Matthews,

Roberts, Clark-Martin, and Boggs violated plaintiff's due process rights under the Fifth and

Fourteenth Amendments by hearing and issuing the restraining order ex parte. *Id*. at 7.

////

---

[7] Attached as Exhibit B to plaintiff's first amended complaint is a declaration from defendant Boggs, indicating that Adult Protective Services and California Department of Public Health were contacted, but that they advised Boggs that they had no authority to act. FAC, Ex. B at 26.  It is unclear if plaintiff challenges this assertion.

1    Plaintiff further alleges that defendant Dirk Potter, who was retained by plaintiff's sister,

2  Lorraine Coots, as an attorney to help Ms. Coots gain conservatorship of decedent, became

3  aware of the July 7 hearing hours before it took place, but made no effort to notify Coots or

4  plaintiff, in violation of California Rule of Professional Conduct 3-500.  *Id.* at 8.  Plaintiff alleges

5  that Potter's explanation for not informing them was that he "was swamped."  *Id.*

6    At the July 7 hearing, Judge Roberts also set a status conference for July 15, 2010.  *Id.*

7  Plaintiff alleges that prior to that hearing, Potter drafted a stipulation which agreed with EMC's

8  restrictions, which accepted defendants Calkins and O'Mahoney's appointment as temporary

9  guardians of decedent, and which recognized defendant Stansell as decedent's attorney.  *Id.*

10  Plaintiff alleges that this document was presented to plaintiff's family only five minutes before

11  the July 15 hearing and when plaintiff was not present, and that Potter "coerced [plaintiff's]

12  sisters to sign the stipulation against [their] will (as they did protest) and under the duress of last

13  minute time restraints" by telling them that they needed to sign the document if they wanted to

14  see their mother.  *Id.* at 8-9.  Plaintiff alleges that it was improper for Potter to push her family to

15  sign this document, and that Potter was really representing the interests of defendant EMC.  *Id.*

16  at 9.  Plaintiff claims that Potter then said "Now I gotta get [plaintiff] to sign one," but

17  plaintiff never signed the document; nonetheless, plaintiff alleges she was forced to abide by it.

18  *Id.* at 9.

19    Plaintiff further alleges that the SLAPP lawsuit against her was also intended to obscure

20  defendants' substandard care in order to avoid being sued for the following alleged malpractice.

21  *Id.* at 9-12.  Plaintiff alleges that, prior to the litigation, on May 6, 2010, a nurse misplaced a

22  PICC intravenous line in decedent's right forearm, and the nurse was concerned about a possible

23  blood clot.  *Id.* at 9.  Valcarenghi ordered two anticoagulants; later, Valcarenghi ordered a hold

24  on the anticoagulant, but the hold was not put in place.  *Id.* at 9-10.  Later that day, decedent

25  suffered gastro-intestinal bleeding, and required blood transfusions and stabilization.  *Id.* at 10.

26  ////

5

1  Plaintiff alleges that Valcarenghi "documented that this emergency was secondary to

2  anticoagulant administration." *Id*.  On May 19, decedent began to bleed once more, and

3  Matthews removed more than half of decedent's jejunum (small bowel where food is digested)

4  in response to the bleeding.  *Id*.  Plaintiff alleges that this operation was dangerous and harmful

5  because the doctors did not first address her anti-coagulation status, which had been (according

6  to plaintiff) at abnormal levels due to the use of anticoagulants.  *Id*.  Plaintiff further claims that

7  these actions were below "published medical standards," and that decedent "would never absorb

8  nutrition the same again."  *Id.*

9         Plaintiff also alleges that on June 14, 2010, defendant Kasza falsified medical records by

10  falsely reporting that decedent had aspirated, causing a need for CPR.  *Id.*  According to plaintiff,

11  she witnesses decedent's airway being blocked by a mucous plug and that Kasza's false report

12  "took the blame off EMC, as [decedent] did aspirate during their aggressive CPR, causing

13  aspiration pneumonia in [her] already compromised lungs."  *Id.* at 11.  Plaintiff contends that

14  Valcarenghi "had caused an earlier aspiration and code secondary to giving [decedent]

15  medication that [plaintiff] had advised, if given, could cause her to stop breathing."  *Id*.  Plaintiff

16  alleges that she informed defendant Wilms of a "proven procedure" that would give decedent

17  "great relief" (a thorencentesis), but Wilms would not conduct the procedure.  *Id*.  According to

18  plaintiff, as fluid continued to build in decedent's lungs, decedent suffered a transient

19  atrial-fibrillation, causing "rapid breathing, heart rate of 130s, and great discomfort and stress."

20  *Id.* at 11-12.  Plaintiff alleges that, as a result, Wilms performed an emergency thorencentesis,

21  which was successful.  *Id.* at 12.

22         Plaintiff further alleges that the EMC restrictions "constituted a form of elder abuse by

23  defendants."  *Id.*  Plaintiff contends that during her hospitalization at EMC, decedent was in

24  mortal fear and was denied the comfort and love of her family.  *Id.*  She was also "probed and

25  manipulated coldly by strangers, [and] subjected to [a] torturous, needless, and virtually endless

26  set of procedures."  *Id.*  Plaintiff contends this is a form of kidnaping and should be construed as

false imprisonment, and at the very least should be deemed elder abuse by defendants. *Id.*

Plaintiff contends that the only way she believed she could save her mother was to have her transferred to a different hospital. *Id.* Therefore, plaintiff arranged transfers to three other hospitals, but those transfers were blocked by Nelson, EMC, Matthews, Clark-Martin, Boggs, Valcarenghi, and Wilms by presenting false statements to the court in support of their request for injunctive relief. *Id.* at 12-13. Plaintiff further alleges that defendants falsely claimed they were as capable of providing medical care to decedent as the larger medical centers which plaintiff preferred. *Id*. at 13. Decedent's husband, Richard Martin, also requested a transfer during a meeting with Stansell; however, Stansell, Calkins, O'Mahoney, and Verma denied the transfer. *Id.*

Plaintiff further alleges that Stansell, not knowing decedent's medical history (and with decedent unable to convey her wishes to Stansell), should have resigned as appointed attorney for decedent. *Id.* at 13-14. Plaintiff also alleges that Calkins and O'Mahoney did not fulfil their duties of facilitating communication between the family and EMC, and of protecting decedent, but instead advocated for EMC's position. *Id*. at 14. Plaintiff claims that, because they lacked medical knowledge, Calkins and O'Mahoney agreed to harmful procedures that did more bad than good. *Id*. Plaintiff further alleges that Calkins and O'Mahoney's continued representation put decedent "in a stressful state of confusion and fear." *Id.* at 15.

Plaintiff contends that decedent was ultimately transferred to Kindred Hospital in Sacramento County. *Id*. Plaintiff alleges that, when the transfer occurred, Clark-Martin said she had "no interest" in continuing the TRO, and dismissed all false accusations against [plaintiff] and her family." *Id*. However, Stansell requested to continue serving as decedent's attorney "to see how it goes at Kindred." *Id*. Judge Roberts granted this request, and also held that defendants Calkins and O'Mahoney would remain as guardians. *Id*. While plaintiff originally said that she was "happy to have . . . the guardian[s] stay involved and help," *id*. at 64, plaintiff now alleges that this was improper since Clark-Martin dropped her accusations; however, the

1    court-approved stipulation provided that the limitations would only cease upon further court

2    order. *Id.* at 15, 53.

3        Plaintiff alleges that defendant Calkins "fictitiously" signed her name as "Conservator"

4    when admitting decedent into Kindred (however, court documents reveal that the public

5    guardian was appointed as conservator), and that Calkins was unable to answer the majority of

6    medical history questions. *Id*. at 15-16, 52. Plaintiff attempted to meet with Dr. Lew and Dr.

7    Avdolovic to give them the proper information, but alleges that there was ultimately only a

8    secret meeting in which plaintiff was not allowed to participate. *Id.* at 16. As a result, plaintiff

9    alleges that decedent was subjected to more harmful treatment, ultimately leading to decedent's

10   wrongful death. *Id.*

11       Plaintiff alleges that "by blindly accepting the visitation and informed consent

12   restrictions first applied at EMC" and by following the directives of the EMC physicians,

13   defendants Kindred, Lew, and Avdolovic continued the elder abuse of decedent and failed to

14   provide her reasonable care, which led to her wrongful death. *Id*. at 16-17. Plaintiff also alleges

15   that defendant Avdolovic refused to transfer decedent to another hospital that could provide care

16   for her when a clonidine patch placed by defendant Lew was removed and caused decedent's

17   blood pressure to drop significantly. *Id*. at 17. Plaintiff alleges that defendant Avdolovic

18   recognized that they did not have the equipment to determine whether decedent was bleeding

19   internally, but refused to transfer her. *Id*. Decedent passed away two days later. *Id.*

20   II.      <u>PLAINTIFF'S CLAIMS</u>

21       Plaintiff now brings suit against the seventeen named defendants, and appears to assert

22   several causes of action. *See generally* First Am. Compl., Dckt. No. 74. Plaintiff's first

23   amended complaint does not list specific causes of actions, nor does it state which defendants

24   those claims are asserted against. Instead, the first amended complaint contains a series of titled

25   headings with a muddled discussion of asserted facts below them, sometimes listing a cause or

26   causes of actions and sometimes not. Hidden among the prolix allegations and discussion are

1    certain purported claims.  Specifically, plaintiff alleges: (1) circumvention of health care

2    informed consent standards; (2) defamation; (3) strategic lawsuit against public participation

3    (SLAPP) for purposes of circumventing informed consent; (4) strategic lawsuit against public

4    participation (SLAPP) intended to obscure substandard care in order to avoid litigation for

5    malpractice; and (5) elder abuse and emotional distress.  *Id.*  Also buried in plaintiff's third

6    "claim" is an allegation that (6) plaintiff's due process rights were violated, and (7) that

7    defendant Potter violated California Rule of Professional Conduct 3-500.  *Id.* at 7-8.

8    Additionally, buried in plaintiff's fourth "claim" is an allegation that (8) defendant Kasza

9    violated California Penal Code section 471.5.  *Id.* at 11.  Finally, buried in plaintiff's fifth

10   "claim" are allegations of (9) false imprisonment of decedent,[8] *id.* at 12, and (10) wrongful death

11   of decedent, *id.* at 16-17.[9]

12   III.    MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

13          A.      Rule 12(b)(6) Standard

14          To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

15   must contain more than a "formulaic recitation of the elements of a cause of action"; it must

16   contain factual allegations sufficient to "raise a right to relief above the speculative level."  *Bell*

17   _____

18          [8] In addition to false imprisonment, plaintiff's first amended complaint also appears to allege
     that defendants kidnaped decedent.  FAC at 12.  It is unclear whether plaintiff is seeking to state a
19   cause of action for kidnaping in addition to her cause of action for false imprisonment.  However,
     even if that is her intent, the cause of action would necessarily fail.  California has no civil statute
20   that creates a (distinct) cause of action for kidnaping.  To the extent plaintiff alleges kidnaping
     occurred, the court will consider whether such allegations give rise to a tort claim for false
21   imprisonment.

22          [9] At the very end of plaintiff's first amended complaint, she states that "[t]he other elements
     of [her] case fulfill all definitions of a SLAPP action," and then proceeds to list numerous causes
23   of action.  Specifically, she lists defamation, malicious prosecution or abuse of process, invasion of
     privacy, or wrongful intrusion into private activities, conspiracy, interference with contract or
24   economic advantage, intentional or negligent infliction of emotional distress (both to plaintiff and
     decedent), nuisance, and injunction.  FAC at 18.  However, plaintiff does not actually list any of
25   those as causes of action, nor does she provide any facts in support of any of those purported claims
     or indicate which defendant(s) each such claim would be brought against.  Therefore, none of those
26   purported claims will be discussed herein.

1  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more .

2  . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

3  action." *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp.

4  235-236 (3d ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true,

5  to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949

6  (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when plaintiff

7  pleads factual content that allows the court to draw the reasonable inference that the defendant is

8  liable for the misconduct alleged." *Id.* Dismissal is appropriate based either on the lack of

9  cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal

10  theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

11  In considering a motion to dismiss, the court must accept as true the allegations of the

12  complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe

13  the pleading in the light most favorable to the party opposing the motion, and resolve all doubts

14  in the pleader's favor. *Jenkins v. McKeithem*, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869

15  (1969). The court will "presume that general allegations embrace those specific facts that are

16  necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256

17  (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

18  Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

19  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir.

20  1985). However, the courts liberal interpretation of a pro se litigant's pleading may not supply

21  essential elements of a claim that are not plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir.

22  1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

23  Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual

24  allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v.

25  Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept

26  unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643

1    F.2d 618, 624 (9th Cir. 1981).

2        B.    Plaintiff's Claims

3            1.    Circumvention of Health Care Informed Consent Standards

4        Plaintiff's first "claim" appears to be asserting that defendants EMC, Matthews, Nelson,

5    Clark-Martin, and Boggs did not comply with proper health care informed consent standards.

6    FAC at 4-5.  In essence, this appears to be a claim against those defendants for failing to obtain

7    plaintiff's consent regarding the care of the decedent notwithstanding plaintiff's designation as

8    medical advocate and decision-maker on behalf of decedent.  *Id.*  Plaintiff alleges that

9    "defendants" did not comport with health care informed consent standards for medical

10   procedures, and when plaintiff disagreed with EMC staff on decedent's treatment plan, "a

11   confrontational environment ensued, and the EMC medical staff no longer honored medical

12   decision-making by plaintiff."  *Id.* at 4.  Plaintiff contends that EMC, its doctors, and its staff

13   restricted visitation by plaintiff and her family in order to "reduce scrutiny" on EMC's practices

14   and to circumvent the proper process of obtaining informed consent from the designated health

15   care decision-maker.  *Id.* at 5.

16       Plaintiff has not stated an actionable claim here.  She has not alleged facts sufficient to

17   support any such claim nor stated specifically what conduct each defendant engaged in

18   connection with such a claim.  To the extent this claim is based on alleged medical malpractice

19   by some of the defendants, that claim would stem from an injury to decedent, not plaintiff.  If

20   plaintiff is alleging some sort of tort claim personal to herself she has not identified nor alleged

21   facts establishing the elements for such a cause of action.  In order to bring an action based on an

22   injury to decedent, plaintiff must show that she is decedent's personal representative, or that

23   decedent has no personal representative and that defendant is her successor in interest.  Cal. Civ.

24   Proc. Code § 377.30; *see also* Cal. Welf. & Inst. Code § 15657.3(d)(1)(C) (allowing for certain

25   interested individuals to bring actions for elder abuse in certain circumstances, but not including

26   heirs or beneficiaries).  "A person who wishes to commence a survival action is required to file

11

an affidavit setting forth particular information about the decedent, the claims, and the prosecuting person's relationship to the decedent." *Martinez v. County of Madera*, 2005 WL 2562715 (E.D. Cal. Oct. 8, 2005) (citing Cal. Civ. Proc. Code. § 377.32).  Plaintiff has made no such allegations and has not filed such an affidavit; thus, plaintiff has not established that she can bring this claim and has therefore not stated a claim.

Accordingly, plaintiff's first "claim" for "Circumvention of Health Care Informed Consent Standards" must be dismissed.  Plaintiff will be granted leave to amend to the extent that she can cure these defects.

### 2. Defamation

Plaintiff also alleges that "defendants" defamed her by accusing her of elder abuse in the application for a TRO.  FAC at 5.  Plaintiff does not specifically name defendants in connection with this claim, but she does allege that defendants Clark-Martin and Boggs made false statements in the application.  FAC at 6.  Plaintiff also alleges generally that defendants Nelson, Matthews, and EMC played a role in filing the action seeking a TRO.  *Id.* at 7.

Each of those defendants contends that plaintiff's defamation claim is barred by California's litigation privilege, California Civil Code section 47(b).  Dckt. No. 76 at 12-14; Dckt. No. 80 at 11-12; *see also* Dckt. No. 134.  California Civil Code section 47(b) provides that communications made in or related to judicial proceedings are absolutely immune from tort liability.  Cal. Civ. Code § 47(b).  The California Supreme Court explains that the purpose of the privilege is "to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg v. Anderson*, 50 Cal.3d 205, 213 (1990).  "The litigation privilege applies to any communications (1) made in a judicial proceeding; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; (4) that have some connection or logical relation to the action." *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (citing *Silberg*, 50 Cal.3d at 212).  Once these requirements are met, section 47(b) operates as an absolute privilege.  *Silberg*,

1    50 Cal.3d at 216.  "Any doubt about whether the privilege applies is resolved in favor of

2    applying it."  *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (Cal. Ct. App. 2002).

3         Here, the statements plaintiff alleges to be defamatory were all statements made to the

4    state court in seeking a TRO.  Therefore, they are protected by California's litigation privilege.

5    The litigation privilege serves as an absolute bar to actions, unless plaintiff can allege malicious

6    prosecution.  *Sagonowsky v. More*, 64 Cal. App. 4th 122, 130 (Cal. Ct. App. 1998) (citing *Moore*

7    *v. Conliffe*, 7 Cal. 4th 634, 638 n.1 (1994) and *Rubin v. Green*, 4 Cal. 4th 1187, 1993-1996

8    (1993)).  "In order to state a cause of action for malicious prosecution the plaintiff must allege

9    that the prior action (1) was commenced by or at the direction of the defendant and pursued to a

10   legal termination in plaintiff's favor; (2) was brought without probable cause; and (3) was

11   initiated with malice."  *Sagonowsky v. More*, 64 Cal. App. 4th 122, 128 (Cal. Ct. App. 1998).  In

12   considering the first prong of malicious prosecution, a voluntary dismissal is generally

13   considered a favorable termination for plaintiff, "unless there is a reason for the dismissal not

14   having to do with the merits of the action."  *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044,

15   1048 (E.D. Cal. 2008) *aff'd*, 631 F.3d 1299 (9th Cir. 2011) (citing *MacDonald v. Joslyn*, 275

16   Cal. App. 2d 282, 289 (Cal. Ct. App. 1969)).  If defendants cannot demonstrate "that their

17   voluntary dismissal of the prior action was unrelated to the merits of the action," a motion to

18   dismiss cannot be granted on the basis of the first prong.  *Id.*

19        Plaintiff cannot demonstrate malicious prosecution by any of the defendants.  Here, the

20   reasons for dismissal in the conservatorship case are clear from plaintiff's first amended

21   complaint and the exhibits thereto.  Nowhere in her first amended complaint does plaintiff allege

22   that she received a favorable termination.  FAC at 15.  Instead, she notes that the case was

23   dismissed because decedent was transferred to another hospital; in other words, decedent was no

24   longer a patient at EMC, and thus EMC had "no interest" in pursuing the restrictions and

25   conservatorship.  *Id*.  A court transcript, submitted by plaintiff as an exhibit, confirms this.  It

26   contains a colloquy between Judge Roberts and Clark-Martin in which Clark-Martin informed

the court of the transfer.  The judge asked whether Clark-Martin was then in a position to dismiss the case, and Clark-Martin answered in the affirmative.  *Id*. at 62.  Plaintiff's own exhibit and allegations demonstrate clearly that the reason underlying the dismissal was decedent's departure from EMC, and not based on the merits of the case.  As such, plaintiff cannot allege a malicious prosecution claim here.

Accordingly, defendants Clark-Martin, Boggs, Nelson, Matthews, and EMC are entitled to the litigation privilege in connection with plaintiff's defamation claim and that claim must be dismissed without leave to amend.  *Noll*, 809 F.2d at 1448; *Silberg*, 50 Cal. 3d at 216 (providing an absolute privilege where the litigation privilege applies).

3. <u>SLAPP for Purposes of Circumventing Informed Consent and</u>
4. <u>SLAPP Intended to Obscure Substandard Care/Medical Malpractice</u>

Plaintiff third "claim" alleges that "defendants" filed a Strategic Lawsuit Against Public Participation ("SLAPP") in order to circumvent informed consent.  FAC at 5-8.  Although plaintiff does not specifically state which defendants plaintiff is attempting to sue under this "claim," it appears the claim is directed toward defendants Clark-Martin, Boggs, Nelson, Matthews, and EMC, who plaintiff alleges were involved in filing the TRO action.  Plaintiff's fourth "claim" alleges that the TRO petition was a SLAPP action that was filed in an attempt to obscure substandard care by defendants Valcarenghi, Matthews, Wilms, and EMC in order to avoid being sued for alleged malpractice.  *Id.* at 9-12.

There is a threshold impediment to these claims.  Although plaintiff labels these two counts as "SLAPP" claims, California's anti-SLAPP statute is inapplicable here as plaintiff has not alleged that there is currently a complaint against her.  *See* Cal. Civ. Proc. Code § 425.16 (providing a mechanism for dismissing SLAPP actions, which are pending lawsuits that "masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so," before costly litigation ensues); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010).  *See generally id.*

14

1    Moreover, it is unclear what causes of action plaintiff is attempting to allege.  Neither

2    "claim" states an actionable cause of action, alleges sufficient facts in support of that cause of

3    action, or identifies the specific defendants against whom she asserts that cause of action.  Also,

4    as noted above, to the extent plaintiff purports to state a medical malpractice claim here on

5    behalf of decedent, plaintiff has not shown that she is decedent's personal representative, or that

6    decedent has no personal representative and that defendant is her successor in interest.

7    Therefore, plaintiff's third "claim" alleging "SLAPP for Purposes of Circumventing Informed

8    Consent" and her fourth "claim" alleging "SLAPP Intending to Obscure Substandard

9    Care/Medical Malpractice" must be dismissed.  Plaintiff will be granted leave to amend these

10   claims only if she can cure the aforementioned deficiencies.

11                     5.  Elder Abuse and Emotional Distress

12                          a.  Elder Abuse and/or Emotional Distress on Behalf of Decedent

13   Plaintiff also alleges claims for elder abuse and emotional distress on behalf of decedent

14   and against one or more of the "defendants" at EMC (presumably including EMC, Matthews,

15   Nelson, Clark-Martin, Boggs, Valcarenghi, Wilms, Verma, and/or Kasza), the "defendants" at

16   Kindred (presumably including Lew, Andavolic, and/or Kindred), and against defendants

17   Stansell, Calkins, and O'Mahoney.  FAC at 12-15.

18   These claims, again, stem from alleged injuries to decedent, not plaintiff.  As noted

19   above, in order for Chipman to bring an action based on an injury to the decedent, Chipman must

20   show that she is the decedent's personal representative, or that the decedent has no personal

21   representative and that Chipman is her successor in interest.  Plaintiff has done neither here.

22   Therefore, plaintiff's elder abuse claim and emotional distress claim brought on behalf of

23   decedent must be dismissed with leave to amend in the event plaintiff can cure these defects.[10]

24

25   [10] Although defendant Stansell moves to strike plaintiff's claims under California's
     anti-SLAPP statute, Dckt. No. 96-1 at 4-11, because (1) it is not clear exactly what claims plaintiff
26   is alleging against Stansell or the factual basis for those claims, (2) it does appear that plaintiff is

1    However, plaintiff shall not be given leave to amend these state law claims against

2   defendants Calkins and O'Mahoney.  Plaintiff has not complied with the California

3   Governmental Claims Act ("GCA").  Dckt. No. 85 at 7.  She does not dispute but instead argues

4   that it is not a proper grounds for dismissing her suit.  Dckt. No. 110 at 3.  She is simply

5   mistaken in that regard.

6    Under the GCA, a plaintiff seeking to recover money damages from a state public entity

7   or its employees must present a claim to the California Victim Compensation and Government

8   Claims Board before bringing an action, generally no later than six months after the cause of

9   action accrues.  Cal. Gov't Code § 905.2, 911.2, 945.4, 950.2.  Timely claim presentation is not

10   merely a procedural requirement but is a condition-precedent to causes of action against a public

11   entity for money or damages.  *State of Cal. v. Super. Ct. (Bodde)*, 32 Cal.4th 1234, 1239-40

12   (2004).  As plaintiff admits to not complying with the GCA, these claims and all other state law

14   purporting to state some claims against Stansell that do not involve Stansell's exercise of free speech
15   or petition on an issue of public interest or statements made by Stansell in an official proceeding,
    and (3) plaintiff's entire first amended complaint will be dismissed for failure to state a claim,
16   Stansell's anti-SLAPP motion to strike is denied without prejudice to Stansell (or any of the other
    defendants) moving to dismiss any second amended complaint on those grounds if plaintiff alleges
17   claims in her second amended complaint that would be subject to such a motion.  *See* Cal. Civ. Proc.
    Code § 425.16 (anti-SLAPP statute protecting individuals from meritless, harassing lawsuits whose
18   purpose is to chill the exercise of free speech); *Hilton*, 599 F.3d at 902 (setting forth a two step
    inquiry in anti-SLAPP motions: first, a moving defendant must proffer "a threshold showing . . . that
19   the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant's] right
    of petition or free speech under the United States or California Constitution in connection with a
20   public issue,' as defined in [subsection (e)] of the statute," and second, once a defendant has met the
    first requirement of the anti-SLAPP statute, "the plaintiff must demonstrate that the complaint is
21   both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a
    favorable judgement if the evidence submitted by the plaintiff is credited."); *see also Integrated
22   Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th 515, 527 (Cal. Ct. App. 2006).  For the
    same reasons, defendant Potter's anti-SLAPP motion to strike is also denied.  Further, to the extent
23   other defendants argue that plaintiff's claims should be dismissed under Rule 12(b)(6) in light of
    California's anti-SLAPP statutes, Dckt. No. 76 at 12-14; Dckt. No. 80 at 10; Dckt. No. 94 at 4-8,
24   since plaintiff's entire first amended complaint is dismissed on alternative bases under Rule
    12(b)(6), those arguments need not be reached.

25   Additionally, although Stansell contends that plaintiff's claims are barred by the litigation
    privilege, as decedent's attorney, Stansell cannot claim immunity under the litigation privilege to
26   the extent that plaintiff alleges causes of action arising out of a failure to meet her duties in that
    capacity.

claims against defendants Calkins and O'Mahoney must be dismissed without leave to amend.[11]
*Noll v. Carlson*, 809 F.2d 1446, 1448 (1987) (while the court would normally grant a pro se plaintiff a further opportunity to amend the complaint, the court will not grant leave to amend where it is clear that no amendment can cure the complaint's defects).

### b. Emotional Distress on Behalf of Plaintiff

Plaintiff also purports to state a claim based on her own emotional distress. Plaintiff appears to allege that defendants caused her emotional distress by refusing to transfer decedent to another hospital, and as a result, requiring plaintiff "to witness her mother being harmed daily for months." FAC at 13. Once again, plaintiff does not clearly delineate which defendants she asserts this claim against, nor does she allege sufficient facts demonstrating that those defendants caused plaintiff emotional distress. She does not even state whether the claim is based on alleged negligent *or* intentional infliction of emotional distress. Either way, the claim must be dismissed for failure to allege facts sufficient to entitle her to relief.

### i. Intentional Infliction of Emotional Distress

"In order to establish a claim for intentional infliction of emotional distress under California law, [plaintiff is] required to show (1) that the defendant's conduct was outrageous, (2) that the defendant intended to cause or recklessly disregarded the probability of causing emotional distress, and (3) that the plaintiff's severe emotional suffering was (4) actually and proximately caused by defendant's conduct." *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004). "Only conduct 'exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress' is actionable." *Brooks v. United States*, 29 F. Supp. 2d 613, 617-18 (N.D. Cal. 1998). Where defendant's "conduct was directed primarily at" plaintiff's decedent, recovery is "limited to "'the most extreme cases of

---

[11] Defendants Calkins and O'Mahoney also argue that, as Butte County Public Guardian social workers who were appointed by the court to perform a judicial function, they are entitled to absolute quasi-judicial immunity from suit. Dckt. No. 85 at 6. However, because all claims against those two defendants are dismissed, their quasi-judicial immunity argument need not be addressed.

violent attack, where there is some especial likelihood of fright or shock.'" *Christensen v. Superior Court*, 54 Cal. 3d 868, 905 (1991) (quoting *Ochoa v. Superior Court*, 39 Cal. 3d 159, 165 n. 5 (1985), accord *Coon v. Joseph*, 192 Cal. App. 3d 1269 (1987)).

In the instant case, plaintiff has not alleged that any of the defendants acted intentionally or recklessly, and she has not alleged defendants' activities were "especially calculated to cause" mental distress. *Brooks*, 29 F. Supp. 2d at 617-18. More importantly, plaintiff's claim for emotional distress appears to arise primarily out of, as plaintiff alleges, the fact that decedent suffered while remaining at EMC (and that plaintiff had to see this happen). FAC at 13. Thus, the complained of activity was directed at a third person. In order to qualify as actionable conduct, defendants' activity against decedent must be among "'the most extreme cases of violent attack.'" *Christensen*, 54 Cal. at 905 (quoting *Ochoa*, 39 Cal. 3d at 165 n.5). However, defendants' activity – choosing to treat decedent at their facility rather than transferring her to a different facility – is not a form of violent attack. Accordingly, plaintiff has not stated a claim for intentional infliction of emotional distress and that claim must be dismissed. Plaintiff will be granted leave to amend only if she can cure these defects.

### ii. Negligent Infliction of Emotional Distress

Plaintiff is attempting to claim emotional distress based on an action inflicted on another person – decedent. "In the absence of physical injury or impact to the plaintiff himself, damages for [the negligent infliction of] emotional distress should be recoverable only if the plaintiff: (1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim and, (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness." The Judicial Council of California Advisory Committee on Civil Jury Instructions (CACI) § 1621 (quoting *Thing v. La Chusa*, 48 Cal. 3d 644, 647 (1989)). To be actionable, the injury must have been negligently caused. *Id.* (quoting *Dillon v. Legg*, 68 Cal.2d 728, 746-747 (1968)).

////

18

In the instant case, plaintiff's first amended complaint does not contain sufficient factual allegations to withstand a motion to dismiss.  Plaintiff, aside from conclusory allegations about the hospital being incorrect in asserting that they had the capacity to take care of decedent as well as the other facilities could, has not alleged any facts to demonstrate that defendants' refusal to transfer decedent amounts to negligence.  Likewise, while plaintiff makes the bare assertion that she suffered severe emotional distress, she pleads no facts to demonstrate the extent of distress that she suffered.  As plaintiff's first amended complaint fails to provide these allegations, the motion to dismiss is granted with leave to amend.

### 6. Violation of Due Process

Plaintiff also appears to state a claim again defendants Roberts, EMC, Nelson, Boggs, Matthews, and Clark-Martin based on a violation of plaintiff's Fifth and Fourteenth Amendment rights to due process by hearing the TRO petition and issuing the TRO ex parte.  FAC at 7. Although plaintiff states in a number of her oppositions that she is not suing any party under 42 U.S.C. § 1983 and is only suing directly under the Fifth and Fourteenth Amendments, Dckt. Nos. 106, 110, Section 1983 is the vehicle for asserting a Fifth or Fourteenth Amendment claim against these defendants.  Accordingly, the court addresses the merits of any § 1983 claim predicated on alleged violations of plaintiff's rights under the Fifth or Fourteenth Amendment.

### a. Judge Roberts

First, to the extent plaintiff brings a § 1983 claim for damages against Judge Roberts, FAC at 18-19, Judge Roberts is entitled to absolute immunity from that claim since the damages sought arose out of actions taken within the course and scope of her judicial duties.  *Pierson v. Ray*, 386 U.S. 547, 553-44 (1967) (observing that "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction."); *Mireles v. Waco*, 502 U.S. 9, 9, 12-13 (1991) (holding that a judge who authorized the police to use excessive force to bring an attorney to his court room was, while acting improperly, within the scope of judicial immunity because it related to the judge's

attempts to carry out a judicial function); *Wilhite v. City of Bakersfield*, 2012 WL 273088 (E.D. Cal. Jan. 30, 2012) (noting that "even if the state law claims presentation requirements could be met, the Judicial Defendants are entitled to state law immunities.").  "Such immunity applies even if it leaves 'the genuinely wronged defendant without civil redress against a prosecutor [or judge] whose malicious or dishonest action deprives him of liberty.'"  *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976)).  Even "[g]rave procedural errors or acts in excess of judicial authority do not deprive a judge of this immunity."  *Id.* (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988)).  Furthermore, federal immunity extends to suits for damages arising under 42 U.S.C. § 1983.  *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443, *overruled on other grounds by Bull v. City and County of San Francisco*, 595 F.3d 964 (9th Cir. 2010) (noting that "[s]tates or governmental entities that are considered 'arms of the state'. . . are not persons within the meaning of §1983."); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (state officers are not persons within the meaning of § 1983); Cal. Gov't Code §§ 811.9(a) *et seq.* (judicial officers are state officers).

While plaintiff asks for an injunction against Judge Roberts in her opposition to Judge Roberts' motion to dismiss, Dckt. No. 105 at 3, the court can only consider the remedies requested in plaintiff's current complaint.  *Blue Dolphin Charters, Ltd.*, 2012 WL 1185945 (citing *Hal Roach Studios Inc.*, 896 F.2d at 1554) (holding that, in considering a motion to dismiss, the court must not go beyond the pleadings, certain authentic attached exhibits, and those other materials which the court judicially recognizes).  Plaintiff's first amended complaint presents an action for damages regarding Judge Roberts' presiding role in decedent's conservatorship case, FAC at 6, 15, 18-19, and accordingly, plaintiff cannot maintain a suit against her.  The motion to dismiss is therefore granted.

Additionally, injunctive relief is a remedy, not an independent cause of action.  Plaintiff has not explained how she would be entitled to a remedy on a claim that is barred by absolute judicial immunity.  Nor has she shown in anyway that she is entitled to an injunction against

1    Judge Roberts.  For these reasons leave to amend her § 1983 claim for injunctive relief would be

2    futile.  Accordingly, plaintiff's § 1983 claim against Roberts must be dismissed without leave to

3    amend.[12]

4                     b.  EMC, Nelson, Boggs, Matthews, and Clark-Martin

5        Plaintiff's § 1983 claim against the other defendants must also be dismissed.  To state a

6    claim under § 1983, plaintiff must allege: (1) the violation of a federal constitutional or statutory

7    right; and (2) that the violation was committed by a person acting under the color of state law.

8    *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Here, plaintiff has not alleged that any of the

9    defendants she purports to sue under § 1983 (besides Judge Roberts, who is immune from suit)

10   are state actors or were otherwise acting under color of law.  *See Sutton v. Providence St. Joseph*

11   *Med. Ctr.*, 192 F.3d 826, 835 (9th Cir.1999) (The party charged with a constitutional deprivation

12   under § 1983 must be a person who may fairly be said to be a governmental actor) (citation and

13   quotations omitted).  Section "1983 excludes from its reach merely private conduct, no matter

14   how discriminatory or wrong."  *Id.* (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50

15   (1999) (citation and internal quotation marks omitted)).  Plaintiff also has not alleged sufficient

16   facts demonstrating how each of the alleged defendants violated plaintiff's constitutional right to

17   due process.  Accordingly, plaintiff's § 1983 claim against EMC, Nelson, Boggs, Matthews, and

18   Clark-Martin should be dismissed with leave to amend.

19                   7.  Violation of California Rule of Professional Conduct 3-500/Legal Malpractice

20       Plaintiff also states a claim against defendant Potter based on Potter's failure to notify

21   plaintiff of the TRO hearing, allegedly in violation of California Rule of Professional Conduct 3-

22   500.  FAC at 8.  Plaintiff also contends that Potter "coerced [plaintiff's] sisters to sign [a]

23

24       [12] Plaintiff does not allege any state claims against Judge Roberts.  However, even if she did,
     Judge Roberts would also be immune from liability under California law.  *See Soliz v. Williams*, 74
25   Cal. App. 4th 577, 587 (Cal. Ct. App. 1999) (finding a judge was immune, under state law, from any
     action arising out of his hallway comments to a litigant because those comments were part of an
26   effort to resolve the case).  Accordingly, all claims against Judge Roberts will be dismissed without
     leave to amend.

1   stipulation against [their] will (as they did protest) and under the duress of last minute time

2   restraints" by telling them that they needed to sign the document if they wanted to see their

3   mother. *Id*. at 8-9.  Plaintiff alleges that it was improper for Potter to push her family to sign this

4   document, and that Potter was really representing the interests of defendant EMC. *Id*. at 9.

5   Plaintiff claims that Potter then said "Now I gotta get [plaintiff] to sign one," but that plaintiff

6   never signed the document; nonetheless, plaintiff alleges she was forced to abide by it.  *Id*. at 9.

7          These assertions suggest an allegation of legal malpractice against Potter.  FAC at 9, 14.

8   However, the claim as plead necessarily fails.  The core of plaintiff's argument is that defendant

9   Potter failed to notify plaintiff and her family of the TRO hearing and improperly convinced

10   plaintiff's family to sign the stipulation.  Yet, plaintiff specifically alleges that Potter was hired

11   as an attorney for plaintiff's sister, not plaintiff.  FAC at 8.  Moreover, with regard to the

12   stipulation, plaintiff specifically admits that she "never signed this document or ever agreed to

13   the unlawful restrictions." *Id*. at 9.  While plaintiff also alleges that she was "forced to follow

14   . . . [the stipulation] to the letter," she does not indicate how Potter was responsible for this.[13]

15   Therefore, plaintiff's allegations are too conclusory and contain too few relevant factual

16   allegations to survive Potter's motion to dismiss.  Accordingly, the claim should be dismissed

17   with leave to amend.[14]

18

19          [13] Plaintiff's first amended complaint does reflect that her family was subject to this allegedly
20   wrongful behavior; however, her family is not party to this suit, and plaintiff does not have standing
     to assert a cause of action on their behalf.

21          [14] Defendant Potter also argues that the Noerr-Pennington doctrine bars all of plaintiff's
     claims against him. Dckt. No. 94 at 13.  The Noerr-Pennington doctrine is a principle of statutory
22   construction that bars suits arising out of certain efforts to petition the government.  *Theme
     Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1006-07 (9th Cir. 2008).  While initially
23   limited to efforts to lobby the legislative branch on anti-trust matters, the doctrine has since been
     expanded to cover the other branches, including the courts, and has been expanded to cover subjects
24   other than anti-trust issues, including § 1983 actions and common law claims. *Cal. Motor Transp.
     Co. v. Trucking Unlimited*, 404 U.S. 508, 509-11 (1972); *Winters v. Jordan*, 2010 WL 2838634
25   (E.D. Cal. July 20, 2010), report and recommendation adopted, 2010 WL 3636221 (E.D. Cal. Sept.
     14, 2010), *aff'd*, 2012 WL 2785889 (9th Cir. July 10, 2012) (citing *Empress LLC v. City & County
26   of San Francisco*, 419 F.3d 1052, 1056-57 (9th Cir. 2005) and *Manistee Town Ctr. v. City of*

8.  <u>Violation of California Penal Code Section 471.5</u>

Plaintiff brings a cause of action against defendant Kasza on the grounds that he violated California Penal Code section 471.5.  Section 471.5 states that "[a]ny person who alters or modifies the medical record of any person, with fraudulent intent, or who, with fraudulent intent, creates any false medical record, is guilty of a misdemeanor."  Cal. Pen. Code § 471.5. However, as is clear from the language of the act, section 471.5 creates only criminal liability. *See* Cal. Pen. Code § 471.5 (noting that one who violates the act "is guilty of a misdemeanor."). Thus, plaintiff cannot state a cause of action under the statute because "no private right was included by the Legislature when it enacted the statute."  *Burrows v. Adventist Health, Inc.*, WL 201503, at *2 (N.D. Cal. Jan. 22, 2004).  Therefore, this claim must be dismissed without leave to amend.  *Noll,* 809 F.2d at 1448.

_____

*Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000)) (observing that the Noerr-Pennington doctrine applies to § 1983 actions); *Theme*, 546 F.3d at 1007 (holding that common law claims are subject to the Noerr-Pennington doctrine because "[t]here is simply no reason that an common-law tort doctrine can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust.").

As it operates now in the judicial context, the Noerr-Pennington doctrine provides protection against causes of action arising out of "what may fairly be described as petitions."  *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005).  A key aspect of a petition is that it includes "a communication to the court."  *Id*. (citing *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078-79 (9th Cir. 2004)).  Petitions include a party's complaint, answer, and counterclaims because such documents involve a party making "representations and present[ing] arguments to support their request that the court do or not do something."  *Id*.  The doctrine extends to "certain conduct 'incidental to the prosecution of the suit.'"  *Theofel,* 359 F.3d at 1078 (quoting *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528-29 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993)).  For instance, the doctrine extends to filing a subpoena, even though such action between private parties "bears little resemblance to the sort of government petitioning the doctrine was designed to protect."  *Id.*

Here, plaintiff's action against Potter arises from his actions as an attorney in the conservatorship matter.  FAC at 8-9.  Plaintiff alleges that Potter did not show up for the first hearing, drafted a visitation restriction stipulation with EMC's interests in mind, and coerced plaintiff's family to sign the stipulation.  *Id.*  Although plaintiff does allege a cause of action relating to statements made by Potter to the court, FAC at 8-9, the heart of plaintiff's allegations is that defendant did not properly represent her and her family's interests in failing to notify them of the first hearing and in convincing them to sign the stipulation.  *Id.*  Plaintiff's complaint is not alleging a cause of action based on petitioning activity, but is instead concerned with the nature of the wholly private relationship between Potter and plaintiff and her family.  It is thus outside the scope of the Noerr-Pennington doctrine.  Potter's additional argument that the complaint is barred by the litigation privilege need not be addressed at this time.

### 9. False Imprisonment

Likewise, plaintiff's claim for false imprisonment must be dismissed without leave to amend. *Noll*, 809 F.2d at 1448 (while the court would normally grant a pro se plaintiff a chance to amend his complaint, the court will not grant leave to amend where it is clear that no amendment can cure the complaint's defects).  In the instant case, even if plaintiff can show that she has the right to bring a survival action, her claim is barred by the one year statute of limitations imposed on claims of false imprisonment.  Cal. Civ. Proc. Code § 340.  Plaintiff's complaint was filed on October 20, 2011, exactly one year after the day of decedent's death.  FAC at 1-2.  While plaintiff does not clearly indicate what dates she ascribes to the false imprisonment, the charge is based in plaintiff's stay at EMC, not Kindred, which occurred before October 20, 2010.  FAC at 12, 14-15.  Thus, the facts giving rise to the claim occurred outside of the statute of limitations and are time-barred.

Assuming, arguendo, that plaintiff could allege equitable tolling to salvage her claim, her claim must still be dismissed without leave to amend because plaintiff cannot allege the basis for a false imprisonment claim.  False imprisonment is the "'unlawful violation of the personal liberty of another,'" including a confinement that is "'without lawful privilege.'"  *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 757 (1997) (quoting *Fermino v. Fedco Inc.*, 7 Cal. 4th 701, 715 (1994) and *Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1123 (1998)).  Here plaintiff's factual allegations are that decedent's was falsely imprisoned because of EMC's visitation restrictions.  FAC at 11.  Yet, those restrictions were imposed by the Superior Court.  *Id.* at 8-9.  Plaintiff does not and cannot allege that decedent was confined without lawful privilege.  Therefore, plaintiff's claim for false imprisonment must be dismissed without leave to amend.

### 10. Wrongful Death

Plaintiff also appears to assert a claim for wrongful death against defendants Lew, Avdolovic, Kindred, Stansell, Calkins, and O'Mahoney.  FAC at 2, 13-14, 16-17.  As discussed above, plaintiff's state law claims against Calkins and O'Mahoney have been dismissed without

leave to amend, and therefore this court will only consider the wrongful death action against

defendants Lew, Avdolovic, and Kindred.

Wrongful death actions may be brought by a decedent's children.  Cal. Civ. Proc. Code

§ 377.60(a).  "The elements of the cause of action for wrongful death are the tort (negligence or

other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss

suffered by the heirs."  *Quiroz v. Seventh Ave. Center*, 140 Cal. App. 4th 1256, 1263 (Cal. Ct.

App. 2006); *Wright v. City of Los Angeles*, 219 Cal. App. 3d 318, 344, 358 (Cal. Ct. App. 1990).

For a wrongful death action to survive a motion to dismiss, "the complaint must contain

allegations as to all elements of actionable negligence."  *Van Horn v. Hornbeak*, 2009 WL

435104 (E.D. Cal. Feb. 19, 2009) (citing *Jacoves v. United Merchandising Corp*., 9 Cal. App.

4th 88, 105 (1992)).  To allege professional negligence, plaintiff must allege: (1) the duty of the

professional to use such skill, prudence, and diligence as other members of his profession

commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection

between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting

from the professional negligence.  *Fuentes v. County of Madera*, 2006 WL 3087172 (E.D. Cal.

Oct. 30, 2006) (citing *Elcome v. Chin*, 110 Cal. App. 4th 310, 317 (Cal. Ct. App. 2003)).  In

terms of causation, a defendant's negligent act is only the cause of death where "in the absence

of other reasonable causal explanations, it becomes more likely than not that the injury was a

result" of the negligence.  *Fuentes*, 2006 WL 3087172 (citing *Jennings v. Palomar Pomerado*

*Health Systems, Inc*., 114 Cal. App. 4th 1108, 1118 (Cal. Ct. App. 2003)).

Here, plaintiff has not plead sufficient allegations to meet the causation requirement for

professional negligence.  Plaintiff alleges that Lew removed a clonidine patch placed in decedent

which caused her blood pressure to drop.  FAC at 17.  Plaintiff further alleges that Avdolovic

thought decedent was bleeding internally, but refused to transfer her to a hospital that had the

proper diagnostic equipment.  *Id*.  Plaintiff next alleges that, after this refusal, decedent lived two

more days.  *Id*.  As alleged, these facts do not actually indicate that the decedent's death was the

1   result of this failure to transfer, nor does the first amended complaint clearly allege that

2   decedent's death was actually related to the removal of the patch.  Indeed, the complaint is

3   entirely silent on what was the precise cause of death.  Therefore, the allegations in the first

4   amended complaint do not establish causation, and the motion to dismiss must be granted with

5   leave to amend.

6   V.   REMAINING CLAIMS/LEAVE TO AMEND

7         As noted herein, plaintiff's first amended complaint is by and large unintelligible –

8   plaintiff does not clearly indicate what causes of action she is attempting to assert, and the

9   complaint has left defendants and the court guessing as to what claims plaintiff's first amended

10  complaint presents and as to whom the claims are lobbied against.  Plaintiff's attempts to simply

11  provide a laundry list of causes of action and to title certain sections of facts do not satisfy the

12  requirements of Rule 8(a).  Therefore, to the extent that any claims remain, those claims should

13  be dismissed for failure to state a claim.

14        Plaintiff is admonished that her opportunity to amend to state a claim is not limitless.  If

15  plaintiff elects to file a second amended complaint, plaintiff must clearly indicate what causes of

16  action she is bringing and against whom.  The compliant must specifically indicate what factual

17  allegations satisfy the elements of those causes of action and it must do so for each claim as to

18  each defendant.  Plaintiff must do this to the extent necessary to clearly convey to defendants

19  what causes of action she has brought and against whom.  If the second amended complaint

20  remains unclear, it may be dismissed without further leave to amend.  Moreover, when

21  considering her second amended complaint, the court will only consider the information actually

22  plead in the complaint; it will not consider any information in her past complaints, her past

23  oppositions to motions to dismiss, or her future oppositions to motions to dismiss.  Local Rule

24  220 requires that an amended complaint be complete in itself without reference to any prior

25  pleading.  This is because, as a general rule, an amended complaint supersedes the original

26  complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).

Additionally, plaintiff must comply with the requirements of Federal Rules of Civil Procedure 8(a) (i.e., that the complaint set forth a short and plain statement of the claim(s), showing entitlement to relief and giving the defendant(s) fair notice of the claim(s) against them) and 10(b) (i.e., if plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs).  Failure to file a second amended complaint will result in a recommendation that this action be dismissed.

VI.   <u>CONCLUSION</u>

Accordingly, IT IS HEREBY ORDERED that:

1.  The status (pretrial scheduling) conference currently set for April 17, 2013 is continued to August 28, 2013 at 10:00 a.m. in Courtroom No. 8.

2.  On or before August 14, 2013, the parties shall file status reports, as provided in the court's October 20, 2011 order.

IT IS FURTHER RECOMMENDED that:

1.  Defendants' motions to dismiss, Dckt. Nos. 76, 77, 78, 79, 80, 83, 85, 87, 94, 95, and 96, be granted as provided herein;

2.  Plaintiff's entire first amended complaint be dismissed with leave to amend, except as to plaintiff's defamation claim and other claims barred by California's litigation privilege, plaintiff's claim under California Penal Code section 471.5, plaintiff's false imprisonment claim, and all claims against defendants Roberts, Calkins, and O'Mahoney, which should be dismissed without leave to amend; and

3.  Plaintiff be provided forty-five days from the date of any order adopting these findings and recommendations is filed to file a second amended complaint as provided herein.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within a specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 13, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE