UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKIE L. CHIPMAN,<br><br>Plaintiff,<br><br>v.<br><br>MARCIA F. NELSON, M.D., ENLOE MEDICAL CENTER, JOSEPH M. MATTHEWS, M.D., GERARD R. VALCARENGHI, M.D., DALE J. WILMS, M.D., DINESH VERMA, M.D., ATTILA KASZA, M.D., JANE STANSELL, DIRK POTTER, JULIE CLARK-MARTIN, BRENDA BOGGS-HARGIS, KINDRED HOSPITAL SACRAMENTO, EVA LEW, M.D., MARK AVDOLAVIC, M.D., and DOES 1 through 25,<br><br>Defendants. | No. 2:11-cv-2770-TLN-EFB PS<br><br>FINDINGS AND RECOMMENDATIONS |

This case was before the court on January 22, 2014 for hearing on numerous motions to dismiss and to strike plaintiff's fourth amended complaint filed by the remaining defendants.[1] Specifically, defendants Enloe Medical Center ("EMC"), Brenda Boggs, and Marcia F. Nelson, M.D., move to dismiss plaintiff's complaint under Federal Rule of Civil Procedure ("Rule")

---

[1] This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21). *See* 28 U.S.C. § 636(b)(1).

1

1  12(b)(1), ECF No. 258; defendant THC Orange County dba Kindred Hospital Sacramento
2  ("Kindred"), moves to dismiss the complaint under Rule 12(b)(1) and 12(b)(6) and, in the
3  alternative, moves for a more definite statement under Rule 12(e).  ECF No. 259.  Defendants
4  Eva Lew, M.D. and Mark Avdalovic, M.D., move to dismiss the complaint under Rule 12(b)(6)
5  and, in the alternative, move for a more definite statement under Rule 12(e), ECF No. 294; as do
6  defendant Attila Kasza, M.D., ECF No. 277, defendants Gerard R. Valcarenghi, M.D., Dale J.
7  Wilms, M.D., and Dinesh Verma, M.D., ECF No. 266, defendant Joseph Matthews, ECF No.
8  262, and defendant Julie Clark-Martin, ECF No. 257.  Defendant Jane Stansell, moves to dismiss
9  the complaint for failure to state a claim, to strike under the anti-SLAPP (Strategic Lawsuit
10  Against Public Participation) provisions set forth in California Civil Procedure Code section
11  425.16 and, in the alternative, moves for more definite statement under Rule 12(e).  ECF No. 248.
12  Defendant Dirk Potter moves to strike the complaint under the anti-SLAPP provisions and, in the
13  alternative, to dismiss under Rule 12(b)(6).  ECF No. 249.

14  Attorney Brian Johnson appeared at the hearing on behalf of Joseph Matthews; attorney
15  Maria Winter appeared on behalf of Gerard Valcarenghi, Dal Wilms, and Dinesh Verma; attorney
16  Tahj Gomes appeared on behalf of Attila Kasza; attorney Robert Lucas appeared on behalf of
17  Jane Stansell; attorney Mary Greene appeared on behalf of Julie Clark-Martin; attorney Wendy
18  Taylor appeared on behalf of Dirk Potter; Valerie Ly appeared on behalf of Enloe Medical
19  Center, Brenda Boggs, and Marcia Nelson; Justin Biddle appeared on behalf of Kindred; attorney
20  Ronald Lamb appeared on behalf of Eva Lew and Mark Avdalovic; plaintiff appeared pro se.  For
21  the reasons stated herein, plaintiff's fourth amended complaint must be dismissed under Rule
22  12(b)(6).

23  I.     PROCEDURAL HISTORY
24  This action was commenced on October 20, 2011.  ECF No. 1.  Numerous motions to
25  dismiss and to strike the original complaint were filed by various defendants.  ECF Nos. 12, 13,
26  15, 16, 17, 21, 22, 25, 27, 28, 29, 32, 38, 39; *see also* 20, 40, 41, 44.  On February 29, 2012,
27  plaintiff filed a single, consolidated opposition to the multiple motions.  ECF No. 49.  Plaintiff's
28  pleading purported to provide a "more definitive statement."  The pleading was therefore

construed as a motion to amend the complaint, which was granted on March 12, 2012. ECF No. 64.

On March 30, 2012, plaintiff filed a first amended complaint. ECF No. 74. The first amended complaint alleged several causes of action against seventeen named defendants. All defendants moved to dismiss the amended complaint. ECF Nos. 76, 77, 78, 79, 80, 83, 85, 87, 94, 95, 96. On March 28, 2013, the first amended complaint was dismissed with leave to amend, except as to claims barred by California's litigation privilege, plaintiff's claim under California Penal Code section 471.5, plaintiff's false imprisonment claim, and all claims against three defendants (Roberts, Calkins, and O'Mahoney), which were dismissed without leave to amend. ECF Nos. 151, 152.

On May 13, 2013, plaintiff filed a second amended complaint. ECF No. 154. Various defendants moved to dismiss that complaint. ECF Nos. 156, 157, 158, 161, 162, 163, 178. In response, plaintiff sent a letter to the court, ECF No. 166, which was construed as a motion to amend the second amended complaint. ECF No. 179. The motion to amend was granted, *id.*, and on July 19, 2013, plaintiff filed a third amended complaint. ECF No. 180. Another round of motions to dismiss ensued, again resulting in plaintiff requesting leave to amend her complaint. ECF No. 221. Plaintiff argued that leave to amend was necessary because her third amended complaint omitted factual allegations necessary to support her claims. *Id.* at 2. On October 21, 2013, the court again granted her leave to amend. ECF No. 245. However, because plaintiff had been given numerous opportunities to amend, she was admonished that further motions to amend would be looked upon with disfavor. *Id.* at 3.

On November 20, 2013, plaintiff filed a fourth amended complaint ("FAC"). ECF No. 246. The FAC alleges various federal and state law claims on behalf of plaintiff Rickie Chipman, in her individual capacity ("plaintiff"), plaintiff's deceased mother (the "decedent"), and plaintiff's deceased father ("Mr. Martin"),[2] against fourteen defendants. ECF No. 246.

/////

---

[2] Mr. Martin was alive at the time this action was initiated, but died on November 29, 2012. Pl.'s Ex. E, ECF No. 246-5 at 4.

3

All fourteen defendants have moved to dismiss the FAC. ECF Nos. 248, 249, 257, 258, 259, 262, 266, 277, 294. Plaintiff opposes all of the motions. ECF Nos. 297-305.

II.     FACTUAL ALLEGATIONS

Plaintiff alleges that she is a registered nurse in Washington State, and is one of three daughters of the decedent and Mr. Martin. Fourth Am. Compl., ECF No. 246 at 22.[3] Plaintiff's two sisters, Theresa Smith and Lorraine Coots, resided in Chico, California, and lived near their parents so they could assist their father in caring for their mother, who was disabled. *Id.* On May 3, 2010, the decedent was admitted to EMC. *Id.* at 23. At the time of admission, plaintiff's mother, the decedent, suffered from dementia, respiratory problems, and lacked the ability to effectively communicate with others. *Id.* at 23-24. The decedent's family had her admitted to EMC based on their concern over sepsis from a urinary tract infection, possible pneumonia, and a small stage II decubitus ulcer (bedsore). *Id.* at 23. Apparently because of her mother's inability to make health care decisions on her own at the time, plaintiff alleges that her mother's family, at the direction of defendant Nelson (decedent's personal physician and Vice President of Medical Affairs for EMC), formally designated plaintiff as the person authorized to make medical decisions for her mother. *Id.* at 23-24, Pl.'s Ex. A.

On June 14, 2010, plaintiff arranged to have her mother transferred from EMC to the University of Washington Medical Center ("UWMC"), a facility that allegedly had the ability to provide a higher level of care. *Id.* at 24-25. However, according to plaintiff, defendants EMC, Matthews (a surgeon and member of the Board of Trustees of EMC), Verma, Valcarenghi, Wilms, Boggs-Hargis (EMC's Risk Manager), and Clark-Martin (EMC's Litigation Prevention Attorney) falsely accused plaintiff and her family of abuse and interference with her mother's medical care. *Id.* at 24. Defendants EMC, Nelson, Matthews, and Verma also allegedly conveyed false statements regarding the decedent's medical history to UWMC transfer team. *Id.* at 25. The false representation by these defendants resulted in cancelation of the decedent's transfer to UWMC. *Id.* at 24-25.

---

[3] The page numbers cited herein refer to the page numbers assigned by the court's case management and electronic case filing (CM/ECF) system.

4

On May 4, 2010, a nurse misplaced a PICC intravenous line in the decedent's right arm. *Id*. at 29. The next day the decedent's right arm was swollen, numb, cold, and purple in color. *Id*. Notwithstanding the increased pain and swelling in the decedent's right arm, Valcarenghi ordered hospital staff to continue administering intravenous fluid. *Id*. at 30. Plaintiff alleges that "[d]efendant Valcarenghi and defendant ENLOE committed Medical Battery and violated the ADA and the Rehabilitation Act of 1973 by not honoring the decedent's request to stop the painful and injurious ineffective procedure." *Id*.

On May 5, 2010, a new PICC line was placed in the decedent's left arm. *Id*. Due to concerns over possible blood clots, Valcarenghi prescribed the decedent extremely high doses of two anti-coagulants. *Id*. On May 8, 2010, the decedent was given injections by a nurse, which caused the decedent to lose consciousness. *Id*. at 30-31. On the same date, the decedent suffered a gastro-intestinal bleed, which was caused by excessive anti-coagulants. *Id*. at 27, 31. Plaintiff claims that her sisters alerted Verma "of the crisis," but "Defendant Verma inaccurately ordered a cat scan of [the decedent's] head while she lay in a pool of blood." *Id*. at 31. Medical notes indicated the decedent had a "GI Bleed secondary to anticoagulants." *Id*. Plaintiff alleges that prior to being admitted to EMC, the decedent "was never on anticoagulant therapy . . . , nor had she ever had any bleeding from her bowels." *Id*. at 26.

On May 19, 2010, defendant Matthews removed part of the decedent's bowel and jejunum. *Id*. at 26. Plaintiff claims the procedure was an "unnecessary, mutilating, and debilitating dangerous [sic] surgical procedure," *id*. at 27, which amounted to "Medical Battery," *id*. at 26. Plaintiff claims that the surgery was unnecessary because the decedent's bleeding could have been controlled by ceasing all anti-coagulants. *Id*. Plaintiff claims that performing the surgery on the decedent while she was on high levels of anticoagulants fell below "published medical standards." *Id*. at 33.

On July 7, 2010, EMC, Nelson, Matthews, Verma, Clark-Martin, and Boggs-Hargis allegedly attempted to take the decedent away from her family by filing a petition for a temporary restraining order ("TRO") and requesting a state court appoint a temporary guardian for the decedent. *Id*. at 48, Pl.'s Ex. B. The TRO was subsequently granted and a restraining order

5

1    issued, which provided that only one visitor could see the decedent at one time, that visitations

2    were limited to 15 minutes every hour, and that there could be no verbal challenges or physical

3    contact with EMC's staff. *Id*.

4        Plaintiff also alleged that on June 13, 2010, plaintiff's family fired defendant Wilms as the

5    decedent's physician because he initially declined to perform a thorcentesis procedure. *Id*. at 46.

6    Wilms eventually performed the procedure on an emergency basis, but according to plaintiff the

7    delay in performing the procedure caused the decedent to suffer "extreme pain, emotional stress,

8    physical stress to her heart, and anxiety." *Id*.

9        Plaintiff further alleges that defendant Potter, who was retained as counsel by plaintiff's

10   sister to represent plaintiff's family in attaining a conservatorship of the decedent, became aware

11   of a July 7 hearing on EMC's petition for a TRO hours before it took place, but made no effort to

12   notify plaintiff or her family. *Id*. at 48. Potter also breached his duty to plaintiff's family by

13   informing plaintiff and her family to say nothing at a July 15, 2010 hearing, while preparing a

14   Stipulation and Order that favored EMC. Potter also breached his duty to the decedent and her

15   family by coercing the decedent's three daughters into signing the stipulation under duress. *Id*. at

16   49.

17       On September 21, 2010, the decedent was transferred to Kindred Hospital Sacramento

18   ("Kindred"). *Id*. at 41. Plaintiff alleges that defendants Lew and Avdolavic, both physicians

19   employed at Kindred, continued to prescribe harmful medications to the decedent, which

20   ultimately contributed to the decedent's wrongful death, which occurred on October 20, 2010. *Id*.

21   at 53, 58.

22   III.   <u>MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

23       A. <u>Rule 12(b)(6) Standard</u>

24       To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

25   must contain more than a "formulaic recitation of the elements of a cause of action"; it must

26   contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell*

27   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more

28   . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

action." *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969). The court will "presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

The court is mindful of plaintiff's pro se status. Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). The Ninth Circuit has held that the less stringent standard for pro se parties is now higher in light of *Iqbal* and *Twombly*, but the court still continues to construe pro se filings liberally. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, the court's liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not pled. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

/////

B. <u>Plaintiff's Lack of Standing</u>

The fourth amended complaint alleges that plaintiff is the administrator for the estate of the decedent and Mr. Martin. *Id*. at 42, Pl.'s Ex. E. The operative complaint purports to assert numerous federal and state law claims on behalf of plaintiff, the decedent, and Mr. Martin. However, there are two fundamental barriers to suit that plaintiff has yet to overcome. First, she proceeds pro se. "Courts have routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity." *Simon v. Hartford Life, Inc.,* 546 F.3d 661, 664 (9th Cir. 2008). While plaintiff can represent herself as to any causes of action that belong to her, she may not represent other parties or entities, including the decedent's estate. The Ninth Circuit explained in *Simon* that the privilege to represent oneself pro se is personal to the litigant and does not extend to other parties or entities. "Consequently, in an action brought by a pro se litigant, the real party in interest must be the person who 'by substantive law has the right to be enforced.'" *Id.* (quoting *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987)). Secondly, as discussed below, even if plaintiff were represented by counsel, she appears to be asserting causes of action which belonged to the decedent and for which plaintiff has no standing to assert.

Finally, as discussed below, even assuming plaintiff's standing she fails to state a claim.

C. <u>Plaintiff's Purported Causes of Action</u>

Plaintiff's current complaint purports to assert the following causes of actions: (1) civil rights violations of Title III and V of the Americans with Disabilities Act, the Rehabilitation Act, and California Code of Civil Regulations, Title 22, Section 70707; (2) willful misconduct, (3) elder abuse and negligence, (4) medical battery, (5) perjury, (6) malicious prosecution, (7) interference with contract for economic advantage, (8) fraudulent concealment, (9) constructive fraud, (10) conspiracy, (11) severe intentional emotional distress, and (12) wrongful death/survival action.

/////

/////

/////

D.  Federal Claims

Plaintiff's complaint alleges the following federal claims: (1) violation of civil rights; (2) violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*; (3) violation of the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*; and (4) fraudulent concealment under 26 U.S.C. § 7206.

1.  Civil Rights

Throughout the complaint, plaintiff contends that defendants violated her, the decedent, and Mr. Martin's civil rights. The civil rights claims, however, are premised on plaintiff's contention that defendants violated the ADA and the Rehabilitation Act. *See* ECF No. 246 at 55-59. For instance, plaintiff's first cause of action is entitled "CIVIL RIGHTS VIOLATIONS OF TITLE III AND V OF THE AMERICANS WITH DISABILITIES ACT (1990) . . . AND THE REHABILITATION ACT (1973) . . . ." *Id*. at 55. Thus, it is not clear from the complaint whether plaintiff intends to allege a separate cause of action under 28 U.S.C. § 1983, or whether she only intends to assert claims under the ADA and the Rehabilitation Act.

Assuming plaintiff is asserting a 1983 claim, the claim fails as plaintiff has not alleged that any of the defendants are "state actors." To state a claim under § 1983, plaintiff must allege: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Here, plaintiff fails to specifically allege that any of the defendants were acting under color of state law. *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (The party charged with a constitutional deprivation under § 1983 must be a person who may fairly be said to be a governmental actor) (citation and quotations omitted). Section "1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong." *Id*. (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted)). While there are allegations that the Butte County Superior Court appointed defendant Stansell as counsel for the decedent, such appointment does not render Stansell a state actor. *Miranda v. Clark County Nevada*, 319 F.3d 465, 468 (9th Cir. 2003) (public defender not considered a state actor because their interest is in representing their client, and not the

9

government interest). As for the remaining defendants, plaintiff conceded at the January 22 hearing that none are state actors. Accordingly, any claim brought pursuant to 42 U.S.C. § 1983 must be dismissed. Further, it is clear that this defect cannot be cured by amendment.

### 2. Americans with Disabilities Act

The complaint alleges a claim for violation of Title III of the ADA against all defendants. ECF No. 246 at 55-59. Again, the complaint is not clear, but the ADA claim appears to be asserted on behalf of plaintiff, the decedent, and Mr. Martin. As noted, plaintiff is not an attorney and cannot present cases on behalf of others, including the estate. Further, even if she were represented, she cites no authority for her standing to bring an ADA action on behalf of the decedent. Finally, no allegation is made that plaintiff has a qualifying disability under the ADA.

Title III of the ADA[4] provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Here, plaintiff has not alleged that she has a disability.[5] Rather, she made clear at the hearing that for purposes of the ADA claim it is the decedent who is the person with a qualifying disability. Plaintiff appears to be attempting to create a dependency theory of liability under which she can advance as her own claim the alleged disability discrimination against her mother.
/////

---

[4] In asserting her claims under the ADA, plaintiff cites to 42 U.S.C. § 12188(b)(1), which authorizes civil actions by the attorney general to redress violations of Title III of the ADA, a provision having no application here. Presumably, plaintiff intends to assert a claim under 42 U.S.C. § 12182(a).

[5] Nor does she claim that Mr. Martin was disabled.

The complaint alleges that plaintiff was a dependent of a disabled individual with Parkinson's disease, dementia, and "a forced tracheotomy." ECF No. 246 at 15, 22. The complaint further alleges that the decedent's "[f]amily requested a lip reader and was told there were no lip readers available. No speaking tracheotomy was offered or given . . . in direct violation of patient's right to receive needed aid, and the ADA." *Id*. at 57-58. Plaintiff argued at the hearing the decedent's disability was the inability to communicate due to an unnecessary tracheotomy. Plaintiff argued that a lip reader and/or a device that attaches to the tracheotomy would have permitted the decedent to speak and that defendants' failure to provide the decedent that service was a violation of the decedent's rights under the ADA. According to plaintiff, such accommodations were provided to other individuals that had received tracheotomies, but were denied to the decedent.

Assuming plaintiff's inability to communicate due to a tracheotomy constitutes a disability under the ADA, and that defendants were under an obligation to accommodate this impairment by providing a lip reader or other services to assist in communication, and assuming further the improbable proposition that plaintiff has standing to assert the claim,[6] the complaint nevertheless fails to state a claim under Title III of the ADA. The only remedy available under Title III of the ADA is injunctive relief. *See* 42 U.S.C. § 12188(a)(1). As the decedent passed away on October 20, 2010, the court lacks the ability to provide any relief to the decedent for the alleged violation. *See San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (To establish Article III standing to seek injunctive relief, plaintiff must demonstrate, among other things, "a very significant possibility of future harm; it is insufficient for them to demonstrate only a past injury."). Accordingly, plaintiff cannot state an ADA claim under Title III on behalf of the decedent.

The complaint also references Title V of the ADA. ECF No. 246 at 55, 59. Title V of the ADA codifies prohibitions against retaliation and coercion of individuals with disabilities when they oppose an unlawful practice under the ADA or encourage another individual exercising a right granted under that statute. 42 U.S.C. § 12203(a)-(b). To establish a prima facie case of

---

[6] *See Allred v. Solaray, Inc.*, 971 F. Supp. 1394, 1398 (D. Utah 1997) (absent state survival statute providing otherwise, ADA claims do not survive a claimant's death).

retaliation under the ADA, a plaintiff must show that: (1) she engaged in a protected activity; (2) suffered an adverse action; and (3) there was a causal link between the two. *E.g. Brown v. City of Tucson*, 336 F.3d 1181, 1186–87 (9th Cir. 2003) (analyzing burden-shifting applicable to claim of retaliation in violation of 42 U.S.C. § 12203(a) at summary judgment).

The crux of plaintiff's Title V claim is that defendants sought a temporary restraining order against plaintiff and the appointment of a state guardian for the decedent in retaliation for plaintiff and her family filing complaints with the Adult Protective Services and the California Department of Public Health. *Id*. at 34-35. Plaintiff claims that she reported to these agencies that EMC and its staff "were causing Severe Intentional Emotional Distress, committing Elder Abuse, Negligence, Circumvention of Informed Consent, Medical Battery, Violations of [the decedent, Mr.] Martin, and Plaintiff's Civil Rights." ECF No. 246 at 34. At the hearing, plaintiff further explained that she filed claims with these agencies to report EMC's refusal to transfer the decedent and to report what she claims were other acts of elder abuse. Accepting these allegations as true, they fail to state a claim under Title V. It is apparent from plaintiff's allegations that the complaints she filed with Adult Protective Services and the California Department of Public Health, and the defendants' petition for a TRO have nothing to do with the decedent's disability. Instead, the complaints plaintiff filed with the Adult Protective Services and the California Department of Public Health were based on what she claimed to be negligent and substandard medical care, amounting to elder abuse, e.g. whether or not to transfer the decedent to another hospital that allegedly had the ability to provide a higher level of care or whether certain treatments were harmful. *See id*. at 24-25. Furthermore, documents from the state court proceedings relating to the petition for a TRO, which are attached to the complaint, show that the parties' dispute in that litigation was over the decedent's medical care. ECF No. 246-2. While the decedent's medical condition may have qualified her as an individual with a disability, there is no indication that her disability and a failure to accommodate her impairment had any bearing on the complaints plaintiff filed against EMC, or any other defendants, or the subsequent petition for a TRO. Accordingly, plaintiff has failed to state a claim for retaliation under Title V of the ADA. *See* 42 U.S.C. § 12203(a).

### 3. Rehabilitations Act

The complaint also references section 504 of the Rehabilitation Act. ECF No. 246 at 38. "A plaintiff bringing suit under § 504 must show (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

Again, there are no allegations that plaintiff is disabled. As for the decedent, plaintiff cites no authority for her standing to assert a Rehabilitation Act claim on behalf of another. Even assuming some basis for standing, the complaint fails to allege what benefit she was qualified to receive, or that she was denied some benefit based solely on her disability. At the hearing, plaintiff argued that the decedent was denied her right to be transferred to a different hospital. While plaintiff attempts to couch EMC's decision to not transfer the decedent to another hospital as a denial of a benefit, the attachments to the complaint show that the refusal to transfer her arose from a dispute over proper medical care. To the contrary, the petition for the restraining order recites the dire medical condition of the decedent, the urgent need for appropriate medical treatment and the alleged interference with that treatment by the family, including plaintiff. ECF No. 246-2 at 7-10. Even were the court to agree with plaintiff's re-characterization of the dispute, the allegations of plaintiff's complaint and the exhibits thereto fail to show EMC's refusal to transfer the decedent was based on the decedent's disability. Plaintiff simply concludes that the decedent had a right to be transferred to a different hospital, and because she has a disability this denial amounted to a violation of the Rehabilitation Act. As plaintiff has failed to show that the decedent was denied a benefit by reason of her disability, plaintiff fails to state a claim under the Rehabilitation Act.

### 4. Fraudulent Concealment, 26 U.S.C. § 7206

Plaintiff's fourteenth cause of action is entitled fraudulent concealment under 26 U.S.C. § 7206. ECF No. 74-75. Section 7206 of the Internal Revenue Code makes it unlawful to willfully aid or assist in the preparation of fraudulent tax documents. 26 U.S.C. § 7206. This section has no relevance whatsoever to the allegations in the FAC. Furthermore, the statute does

not create a private right of action. Accordingly, plaintiff's fraudulent concealment claim must be dismissed.[7]

E. State Law Claims

In addition to the federal claims discussed above, the complaint also purports to assert several state law claims. A court may exercise supplemental jurisdiction over state-law claims that are part of the "same case or controversy." 28 U.S.C. § 1367(a). Because all of the federal claims must be dismissed, the court may decline to exercise supplemental jurisdiction over plaintiff's state law claims. *See Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 556 U.S. 635, 639–40 (2009); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *Albingia Versicherungs A.G. v. Schenker Int'l Inc.*, 344 F.3d 931, 936 (9th Cir. 2003); 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). In light of the recommendation for dismissal of the federal claims, it is recommended that the court decline supplemental jurisdiction over plaintiff's state law claims.

F. Leave to Amend

Plaintiff has now submitted five different complaints, each drawing motions to dismiss for failure to state a claim followed by plaintiff's requests to amend. These motions provided plaintiff with notice of the pleading requirements and identified various deficiencies in the complaints. Although plaintiff has been given numerous opportunities to state a cause of action, she has been unable to so. Furthermore, the court cannot ignore that the facts alleged in the fourth amended complaint as well as the attachments thereto demonstrate that this case is a dispute over whether the decedent received proper medical treatment, and at its core presents a

---

[7] Tucked away in the FAC's section identifying the parties to this action, plaintiff argues that defendant Clark-Martin violated 18 U.S.C. § 1621 by "presenting falsified information to the [state] Court resulting in a restraining order" and preventing the decedent from receiving care and support from her family." ECF No. 246 at 51. 18 U.S.C. § 1621 makes it a crime to commit perjury. That section, however, does not create a private right of action. *Sordean v. United States*, 1995 WL 86548, at *2 (N.D. Cal. Feb.24, 1995) (no private right of action under 18 U.S.C. §§ 1621 or 1622). Accordingly, to the extent plaintiff attempts to bring a perjury claim under this statute, it must dismissed.

claim of medical malpractice and/or wrongful death, a matter typically litigated in state court, and not a disability discrimination case. While plaintiff has attempted to plead disability discrimination, the complaint and its attachments defeat such a claim. There are no allegations that any of the defendants engaged in any wrongful conduct on account of the decedent's disability, and plaintiff was not able to identifying any such conduct at the January 22 hearing. Rather, the complaint shows that the acts complained of were motivated by and arise out of a disagreement with plaintiff over proper medical treatment. While plaintiff has had five opportunities to allege a federal claim for relief, she has failed to do so. Accordingly, the court finds that providing further leave to amend would be futile. It is therefore recommended that plaintiff's complaint be dismissed without leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc) (Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal).

IV.  CONCLUSION

Accordingly, it is hereby RECOMMENDED that:

1. Defendants' motions to dismiss, ECF Nos. 248, 249, 257, 258, 259, 262, 266, 277, and 294, be granted;

2. Plaintiff's fourth amended complaint, ECF Nos. 246, 247, be dismissed without leave to amend;

3. Plaintiff's 42 U.S.C. § 1983 claim, ADA claims, Rehabilitation Act claim, and 26 U.S.C. § 7206 claim, be dismissed with prejudice;

4. The court decline to exercise supplemental jurisdiction over plaintiff's state law claims; and

5. The Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

1  within the specified time may waive the right to appeal the District Court's order. *Turner v.*

2  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: September 10, 2014.

                                      EDMUND F. BRENNAN
                                      UNITED STATES MAGISTRATE JUDGE