1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RICKIE L. CHIPMAN,                        No.  2:11-cv-2770-TLN-EFB PS

12                  Plaintiff,

13          v.

14   MARCIA F. NELSON, M.D., ENLOE             ORDER AND FINDINGS AND
     MEDICAL CENTER, JOSEPH M.                 RECOMMENDATIONS
15   MATTHEWS, M.D., GERARD R.
     VALCARENGHI, M.D., DALE J.
16   WILMS, M.D., DINESH VERMA, M.D.,
     ATTILA KASZA, M.D., JANE
17   STANSELL, DIRK POTTER, JULIE
     CLARK-MARTIN, BRENDA BOGGS-
18   HARGIS, KINDRED HOSPITAL
     SACRAMENTO, EVA LEW, M.D.,
19   MARK AVDOLAVIC, M.D., and DOES 1
     through 25,
20
                   Defendants.
21

22

23          Presently before the court are numerous motions to dismiss and to strike plaintiff's fifth

24   amended complaint filed by several of the remaining defendants.[1]  Specifically, defendant THC

25   Orange County dba Kindred Hospital Sacramento ("Kindred") and defendant Joseph Matthews

26   move to dismiss the complaint under Rule 12(b)(1) and 12(b)(6).  ECF Nos. 338 and 345.

27   ─────────────────────

28          [1]  This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to
     Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).

                                              1

1    Defendants Eva Lew, M.D. and Mark Avdalovic, M.D., and defendant Attila Kasza, M.D., move

2    to dismiss the complaint under Rule 12(b)(6) and, in the alternative, move for a more definite

3    statement under Rule 12(e).  ECF Nos. 342 and ECF No. 347.  Likewise, defendants Gerard R.

4    Valcarenghi, M.D., Dale J. Wilms, M.D., and Dinesh Verma, M.D. (ECF No. 341), and defendant

5    Julie Clark-Martin (ECF No. 343) move under the same rules.  Defendant Jane Stansell moves to

6    dismiss the complaint for failure to state a claim and strike under the anti-SLAPP (Strategic

7    Lawsuit Against Public Participation) provisions set forth in California Civil Procedure Code

8    section 425.16 and, in the alternative, for a more definite statement.  ECF No. 344.  Defendant

9    Dirk Potter moves to strike the complaint under the anti-SLAPP provisions and, in the alternative,

10   to dismiss under Rule 12(b)(6).  ECF No. 340.

11       Also pending before the court are plaintiff's motion for default judgment against

12   defendant Kimberly Merrifield (ECF No. 372), Ms. Merrifield's related motion to set aside

13   default judgment (ECF No. 375), and plaintiff's request to subpoena court records from the Butte

14   County Superior Court.  ECF No. 337.[2]

15       For the reasons stated herein, plaintiff's request to subpoena records is denied without

16   prejudice.  Further, it is recommended that defendants' motions be granted in part, defendant

17   Merrifield's motion to set aside default be granted, and plaintiff's motion for default judgment be

18   denied.

19   I.      Procedural History

20       This action was commenced on October 20, 2011.  ECF No. 1.  It arises out of a dispute

21   between plaintiff and defendants over the medical care provided to plaintiff's mother, Mary A.

22   Martin.  Numerous motions to dismiss and to strike the original complaint were filed by various

23   defendants.  ECF Nos. 12, 13, 15, 16, 17, 21, 22, 25, 27, 28, 29, 32, 38, 39; *see also* 20, 40, 41,

24   44.  On February 29, 2012, plaintiff filed a single, consolidated opposition to the multiple

25   motions.  ECF No. 49.  Plaintiff's pleading purported to provide a "more definitive statement."

26

27           [2]  The court determined that oral argument would not materially assist in the resolution of
     the motions and therefore the matters were ordered submitted on the briefs.  *See* E.D. Cal. L.R.
28   230(g).

2

1  The pleading was therefore construed as a motion to amend the complaint, which was granted on

2  March 12, 2012.  ECF No. 64.

3       On March 30, 2012, plaintiff filed a first amended complaint purporting to assert several

4  causes of action against seventeen named defendants.  ECF No. 74.  All defendants moved to

5  dismiss that complaint, ECF Nos. 76, 77, 78, 79, 80, 83, 85, 87, 94, 95, 96, and on March 28,

6  2013, it was dismissed with leave to amend, except as to claims barred by California's litigation

7  privilege, plaintiff's claim under California Penal Code section 471.5, plaintiff's false

8  imprisonment claim, and all claims against three defendants (Roberts, Calkins, and O'Mahoney),

9  which were dismissed without leave to amend.  ECF Nos. 151, 152.

10       Plaintiff filed a second amended complaint (ECF No. 154) and various defendants again

11  moved to dismiss.  ECF Nos. 156, 157, 158, 161, 162, 163, 178.  In response, plaintiff sent a

12  letter to the court (ECF No. 166) which was construed as a motion to amend plaintiff's second

13  amended complaint.  ECF No. 179.  So construed, the motion was granted and plaintiff filed a

14  third amended complaint.  ECF No. 180.  Another round of motions to dismiss ensued, again

15  resulting in plaintiff requesting leave to amend her complaint.  ECF No. 221.  Plaintiff argued that

16  her third amended complaint omitted factual allegations necessary to support her claims.  *Id*. at

17  2.[3]  That request, too, was granted.  ECF No. 245.  However, because plaintiff had been given

18  numerous opportunities to amend her complaint, she was admonished that further motions to

19  amend would be looked upon with disfavor.  *Id*. at 3.

20       Plaintiff filed a fourth amended complaint, alleging claims on plaintiff's behalf and on

21  behalf of her deceased mother (the "decedent").  ECF Nos. 246, 247.  That complaint also drew

22  various motions to dismiss and/or strike.  ECF Nos. 248, 249, 253, 257, 258, 259, 262, 266, 277,

23  294.  The undersigned recommended that plaintiff's fourth amended complaint be dismissed

24  without leave to amend, finding that plaintiff failed to state any federal claims for relief and

25  recommending that the court decline to exercise supplemental jurisdiction over the complaint's

26  /////

27   

28      [3]  The page numbers cited herein refer to the page numbers assigned by the court's case management and electronic case filing (CM/ECF) system.

1    state law claims.  ECF No. 330.  The recommendation was adopted in part and the complaint was

2    dismissed, but with further leave to amend.[4]  ECF No. 334.

3          Thereafter, plaintiff filed her fifth amended complaint.  ECF No. 336.  With the exception

4    of defendants Enloe Medical Center ("EMC"), Brenda Boggs, Marcia Nelson, and Kimberly

5    Merrifield, all defendants have moved to dismiss the fifth amended complaint in one form or

6    another.[5]  Plaintiff has also moved for default judgment against defendant Kimberly Merrifield

7    (ECF No. 372), and Ms. Merrifield has moved to set aside the entry of her default.  ECF No. 375.

8    II.    Factual Allegations

9          Plaintiff, Ricki Chipman, alleges that she is a registered nurse residing in Washington

10   State, and is the daughter and heir of Mary A. Martin ("the decedent").  Fifth Am. Compl., ECF

11   No. 336 at 4.  Prior to 2006, the year the decedent began to suffer from dementia, plaintiff was

12   designated to make medical decisions for the decedent.  *Id.*

13         In May 2010, the decedent was admitted to EMC after plaintiff had concerns that the

14   decedent had sepsis.  ECF No. 336 at 19.  The decedent initially improved upon admittance to

15   EMC.  *Id.*  However, plaintiff claims that the decedent eventually began to suffer from a lower

16   gastro-intestinal bleed, which was due to administering unnecessary anticoagulants.  *Id.*  The

17   complaint alleges that plaintiff "witnessed physicians and staff at defendant EMC commit one

18   medical mistake after another and then defendants . . . attempted to cover the mistakes up by

19   performing unnecessary mutilating surgeries and procedures" by falsifying records, committing

20   perjury, and eventually initiating proceedings for a temporary restraining order ("TRO") against

21   plaintiff and her family and for the appointment of a temporary guardian to make medical

22

23         [4] Plaintiff's objections to the findings and recommendations claimed that she just
     discovered that she could not allege claims on behalf of the decedent without defeating diversity
24   jurisdiction.  ECF No. 333 at 2.  She further indicated that she wanted to abandon all claims on
     behalf of the decedent and proceed in this court only with claims that are personal to her, which
25   would provide complete diversity in this action.  Based on those representations, the court granted
     plaintiff leave "to submit an amended complaint that states a state law cause of action personal to
26   her that is based on diversity jurisdiction."  ECF No. 334 at 4.

27         [5] Defendants EMC, Brenda Boggs, and Marcia Nelson filed an answer to the fifth
     amended complaint.  ECF No. 346.
28

1   decisions on the decedent's behalf.  *Id*. at 20-21.  Plaintiff claims that the TRO and

2   conservatorship were obtained by perjury and false information.  *Id*. at 21.

3       On September 21, 2010, the decedent was transferred to Kindred Hospital Sacramento

4   ("Kindred").  *Id*. at 22.  The complaint alleges that Kindred did not have the diagnostic equipment

5   and physicians to properly evaluate and treat the decedent, so plaintiff requested that the decedent

6   be transferred to Mercy Medical Center in Folsom.  *Id*. at 22-23.  The transfer was denied by the

7   court appointed guardian, and on October 20, 2010, the decedent died.  *Id*. at 22-23.  Plaintiff

8   claims that the decedent's death was due to receiving unnecessary anticoagulants, falsified

9   discharge assessments and failure to transfer the decent to an appropriate facility.  *Id*. at 24-26.

10  Plaintiff further contends that the care provided to the decedent by the defendant physicians fell

11  below the applicable standard of care.

12  III.     Defendants' Motions to Dismiss

13          A.  Rule 12(b)(6) Standard

14      To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

15  must contain more than a "formulaic recitation of the elements of a cause of action"; it must

16  contain factual allegations sufficient to "raise a right to relief above the speculative level."  *Bell*

17  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more

18  . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

19  action."  *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-

20  236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to

21  'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)

22  (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads

23  factual content that allows the court to draw the reasonable inference that the defendant is liable

24  for the misconduct alleged."  *Id*.  Dismissal is appropriate based either on the lack of cognizable

25  legal theories or the lack of pleading sufficient facts to support cognizable legal theories.

26  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

27      In considering a motion to dismiss, the court must accept as true the allegations of the

28  complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe

1  the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in

2  the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

3      Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

4  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Unless it is clear that no amendment can cure its

5  defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before

6  dismissal.  *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000); *Noll v. Carlson*, 809 F.2d

7  1446, 1448 (9th Cir. 1987).  However, although the court must construe the pleadings of a pro se

8  litigant liberally, *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985), that liberal

9  interpretation may not supply essential elements of a claim that are not plead.  *Pena v. Gardner*,

10  976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268

11  (9th Cir. 1982).  Furthermore, "[t]he court is not required to accept legal conclusions cast in the

12  form of factual allegations if those conclusions cannot reasonably be drawn from the facts

13  alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need

14  the court accept unreasonable inferences, or unwarranted deductions of fact.  *W. Mining Council*

15  *v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

16      In deciding a Rule 12(b)(6) motion to dismiss, the court may consider facts established by

17  exhibits attached to the complaint.  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.

18  1987).  The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr.*

19  *Ct.*, 828 F.2d at 1338, and matters of public record, including pleadings, orders, and other papers

20  filed with the court.  *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

21      B. Claims on Behalf of the Decedent

22      The fifth amended complaint alleges that plaintiff is the administrator for the estate of the

23  decedent.  ECF No. 336 at 2.  The operative complaint, like plaintiff's prior complaints, purports

24  to assert several survival claims that belong to the estate of the decedent, and not plaintiff

25  personally.  *See Dela Torre v. City of Salinas*, 2010 WL 3743762, at *7 (N.D. Cal. Sept. 17,

26  2010) ("Unlike a wrongful death cause of action, a survival cause of action is not a new cause of

27  action that vests in heirs on the death of the decedent, but rather is a separate and distinct cause of

28  action which belonged to the decedent before death but, by statute, survives the event.").  Under

1  California law, a survival action may be prosecuted by the decedent's personal representative or

2  successor in interest.  Cal. Civ. Proc. Code § 377.30.

3       Although plaintiff alleges that she is the personal representative and successor in interest

4  for the decedent, this court has previously explained to plaintiff "the general rule prohibiting pro

5  se plaintiffs from pursuing claims on behalf of others in a representative complaint."  *Simon v.*

6  *Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008).  While plaintiff can represent herself as to

7  any causes of action that belong to her, she may not represent other parties or entities, including

8  the decedent's estate.  The Ninth Circuit explained in *Simon* that the privilege to represent oneself

9  pro se is personal to the litigant and does not extend to other parties or entities.  "Consequently, in

10 an action brought by a pro se litigant, the real party in interest must be the person who 'by

11 substantive law has the right to be enforced.'"  *Id.* (quoting *C.E. Pope Equity Trust v. United*

12 *States*, 818 F.2d 696, 697 (9th Cir. 1987)).

13       This court has also previously explained to plaintiff that she cannot proceed in this court

14 with claims on behalf of the decedent because such claims would defeat complete diversity.[6]

15 ECF No. 334.  While plaintiff is a resident of Washington, the decedent was a resident of Butte

16 County, California at the time of her death, and "the legal representative of the estate of a

17 decedent shall be deemed to be a citizen only of the same State as the decedent."  28 U.S.C.

18 1332(c)(2).  Accordingly, any claims brought by plaintiff on behalf of the decedent would render

19 this court without subject matter jurisdiction.  Notwithstanding the court's admonishments,

20 plaintiff continues to assert several claims on behalf of the decedent.

21       C.  Plaintiff's Claims

22       The fifth amended complaint purports to assert the following causes of actions: (1) willful

23 misconduct; (2) elder abuse and negligence; (3) medical battery; (4) perjury; (5) malicious

24 prosecution/S.L.A.P.P; (6) interference with contract for economic advantage; (7) fraudulent

---

[6]  Plaintiff's previous complaints alleged claims for violation of federal law.  However, all of plaintiff's federal claims have been dismissed without leave to amend, and plaintiff was only given leave "to submit an amended complaint that states a state law cause of action personal to her that is based on diversity jurisdiction."  ECF No. 334 at 4.  While the fifth amended complaint does not allege any federal claims, it does purport to allege state law claims on behalf of the decedent.

7

1    concealment; (8) constructive fraud; (9) conspiracy; (10) violation of California CCP patient's

2    rights (11) intentional infliction of emotional distress, and (12) wrongful death.  ECF No. 336 at

3    26-49.

4              1.  Willful Misconduct

5         Plaintiff's complaint alleges a claim for willful misconduct against all defendants.  ECF

6    No. 336 at 26.  Willful misconduct is not a separate tort, but is an aggravated form of negligence.[7]

7    *Berkley v. Dowds*, 152 Cal. App. 4th 518, 526 (2007).  Here, plaintiff alleges that each defendant

8    owed a duty of care to the decedent, that they should have known the perils posed by failure to

9    comply with the applicable standards, and that the defendants disregarded the perils and high

10   probability of injury and death to the decedent. ECF No. 336 at 27.  Plaintiff further claims that

11   the defendants "failed to follow the health care decisions of Decedent's health care agent,

12   Plaintiff, Rickie L. Chipman."  *Id*. at 27.

13        Thus, plaintiff's willful misconduct claim is predicated on defendants' alleged breaches of

14   duty owed to the decedent, and not to plaintiff.  This claim is not personal to plaintiff but rather

15   one that belonged to the decedent before her death.  Plaintiff can only assert claims personal to

16   her and cannot proceed in this court on claims on behalf of the decedent.  Accordingly, her willful

17   misconduct claim must be dismissed.

18             2.  Elder Abuse and Negligence

19        Plaintiff also alleges claims for elder abuse and negligence against all defendants.  ECF

20   No. 336 at 31-33.  These claims, again, stem from alleged injuries to the decedent.  The complaint

21   alleges that the decedent was over the age of 65, that all defendants committed neglect, and that

22   as a result the decedent sustained injuries, elder abuse, and wrongful death.  *Id*. at 31.  These

23   _____

24        [7] Although the pleading requirements for willful misconduct are similar to a negligence
     claim, they require more specific facts to state a claim for willful misconduct.  *Id*. (citing *Snider v.*
25   *Whitson*, 184 Cal. App. 2d  211, 214-215 (1960) (plaintiff is required to "state facts more fully
     than in an ordinary negligence claim.")).  "[T]he well-known elements of any negligence cause of
26   action [are] duty, breach of duty, proximate cause and damages."  *Id*. at 526.  In addition, "three
     essential elements must be present to raise a negligent act to the level of willful misconduct: (1)
27   actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive
     knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3)
28   conscious failure to act to avoid the peril."  *Id*. at 528.

1    allegations clearly demonstrate that the injured party was the decedent and therefore these claims

2    belong to the decedent's estate and not plaintiff personally.  Plaintiff, apparently aware that she

3    can only assert claims on her behalf, does allege that she "sustained Intentional Infliction of

4    Emotion Distress from the witnessing and knowledge" of defendants' conduct.  *Id*. at 31-32.

5    However, intentional infliction of emotional distress is a separate cause of action from elder abuse

6    and negligence, and plaintiff's allegation that she sustained emotional injuries on account of

7    defendants' conduct cannot transform claims belonging to the decedent's estate into claims

8    personal to plaintiff.

9           Furthermore, the complaint does not contain any allegations to support a claim for

10   negligence belonging to plaintiff.  "The elements of a medical malpractice claim are: (1) the duty

11   of the professional to use such skill, prudence, and diligence as other members of his profession

12   commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection

13   between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting

14   from the professional's negligence." *Avivi v. Centro Medico Urgente Medical Center*, 159 Cal.

15   App. 4th 463, 468 n.2 (2008).  While plaintiff generally alleges that defendants owed a "duty of

16   honesty," she has failed to allege any facts demonstrating that these defendants owed her, as the

17   decedent's daughter, a duty of care.[8]  *See Rainer v. Grossman*, 31 Cal. App. 3d 539, 543 (1973)

18   ("In the usual case of medical malpractice the duty of care springs from the physician-patient

19   relationship which is basically one of contract.").

20          Accordingly, plaintiff's claims for elder abuse and negligence must be dismissed.

21              3.  <u>Medical Battery</u>

22          Plaintiff also asserts a claim for medical battery against defendants Matthews, Verma, and

23   Wilms.  ECF No. 336 at 33-35.  Plaintiff contends that these physicians subjected the decedent to

24   unnecessary surgeries and procedures.  *Id*. at 33-34.  The complaint further alleges that defendant

25   Wilms purposely withheld a necessary procedure, a thoracentesis, on June 13, 2010.  *Id*. at 35.

26

27          [8] While defendant Dirk Potter, as plaintiff's counsel, may have owed plaintiff a duty of
     care, plaintiff's cause of action for "elder abuse and negligence" does not include any specific
28   allegations against Mr. Potter.

9

1  Again, these allegations concern harm suffered by the decedent, not plaintiff.[9]  Thus, this claim

2  must also be dismissed.

3                              4.  <u>Perjury</u>

4       Plaintiff's fourth cause of action is for perjury against defendants Nelson, EMC,

5  Matthews, Verma, Clark-Martin, Boggs, Potter, Stansell, and Merrifield.  California law does not

6  recognize a civil action for perjury.  *Carden v. Getzoff*, 190 Cal. App. 3d  907, 915 (1987) (citing

7  *Taylor v. Bidwell*, 65 Cal. 489, 490 (1884)).  Plaintiff therefore may not maintain her claim for

8  perjury against these defendants.

9                         5.  <u>Malicious Prosecution/S.L.A.P.P.</u>

10      Plaintiff's fifth cause of action is entitled malicious prosecution/Strategic Lawsuit Against

11  Public Participation (S.L.A.P.P.), and appears to be a claim for malicious prosecution against

12  defendants Nelson, EMC, Matthews, Verma, Clark-Martin, Boggs, Potter, Stansell, and

13  Merrifield.  ECF No. 336 at 37-40.  This claim arises out of these defendants' involvement in

14  seeking a TRO and the appointment of a conservatorship to make medical decisions on behalf of

15  the decedent.  *Id.* at 38-40.

16      This court previously concluded that plaintiff cannot pursue a claim for malicious

17  prosecution against defendants in relation to the TRO and conservatorship proceedings.  In

18  plaintiff's first amended complaint, plaintiff alleged a claim for defamation against defendants

19  Clark-Martin, Boggs, Nelson, Matthews, and EMC based on their roles in filing the action

20  seeking a TRO.  ECF No. 74 at 6-7.  Those defendants moved to dismiss the defamation claim on

21  the ground that it was barred by California's litigation privilege.  ECF No. 76 at 12-14; ECF No.

22  80 at 11-12; ECF No. 134.  The court found that the defamatory statements were all made to the

23  state court in seeking a TRO, and therefore were protected by California's litigation privilege.

24  ECF No. 151.  The court observed that the litigation privilege serves as an absolute bar, unless

25  plaintiff can allege malicious prosecution.  *Id.*  The record before the court established that

26

27      [9]  Plaintiff also attempts to salvage this claim by alleging that the defendants' conduct
   caused her intentional infliction of emotional distress.  ECF No. 336 ¶ 115.  As already explained
28  above, this allegation is insufficient to transform the claim into one that is personal to plaintiff.

1    plaintiff could not succeed on a claim of malicious prosecution.

2          "In order to state a cause of action for malicious prosecution the plaintiff must allege that

3    the prior action (1) was commenced by or at the direction of the defendant and pursued to a legal

4    termination in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated

5    with malice" *Sagonowsky v. More*, 64 Cal. App. 4th. 122, 128 (1998).  This court found that

6    plaintiff could not state a claim for malicious prosecution because a court transcript, submitted

7    with the first amended complaint as an exhibit, demonstrated that the conservatorship case was

8    dismissed due to the decedent no longer being a patient at EMC, and thus EMC no longer having

9    an interest in pursuing the conservatorship.  ECF No. 151 at 13; *see* ECF No. 74 at 62.  Based on

10   these facts, plaintiff could not show that the prior action was pursued to a legal termination in

11   plaintiff's favor.  Thus, the court concluded that "plaintiff cannot allege a malicious prosecution

12   claim here" and plaintiff's defamation claim was dismissed without leave to amend.[10]

13         Although the court's prior ruling was in relation to plaintiff's claim for defamation, the

14   court nevertheless concluded that plaintiff cannot succeed on a claim for malicious prosecution.

15   Accordingly, this claim must also be dismissed.

16               6.  Interference with Contract for Economic Advantage

17         Plaintiff also alleges a claim for interference with a contract for economic advantage

18   against defendants Nelson, EMC, Matthews, Verma, Stansell, Merrifield, Potter, Clark-Martin,

19   and Boggs.  ECF No. 336 at 40-41.

20         "The elements which a plaintiff must plead to state the cause of action for intentional

21   interference with contractual relations are (1) a valid contract between plaintiff and a third party;

22   (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a

23   breach or disruption of the contractual relationship; (4) actual breach or disruption of the

24   ───────────────────

25         [10]   The court's March 13, 2013, findings and recommendations also found that
     California's anti-SLAPP statute was inapplicable to this case as plaintiff failed to allege that there
26   is currently a complaint against her.  ECF No. 151; *see* Cal. Civ. Proc. Code § 425.16 (providing
     a mechanism for dismissing SLAPP actions, which are pending lawsuits that "masquerade as
27   ordinary lawsuits but are brought to deter common citizens from exercising their political or legal
     rights or to punish them for doing so," before costly litigations ensues).  The fifth amended
28   complaint also fails to allege that there is currently a complaint against plaintiff.

1   contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns*
2   *& Co.*, 50 Cal. 3d 1118, 1126 (1990) (citations omitted).  "The tort of interference with
3   prospective economic advantage protects the same interest in stable economic relationships as
4   does the tort of interference with contract, though interference with prospective advantage does
5   not require proof of a legally binding contract.  The chief practical distinction between
6   interference with contract and interference with prospective economic advantage is that a broader
7   range of privilege to interfere is recognized when the relationship or economic advantage
8   interfered with is only prospective." *Id.* (citations and fn. omitted).  "To prevail on a cause of
9   action for intentional interference with prospective economic advantage in California, a plaintiff
10  must plead and prove (1) an economic relationship between the plaintiff and some third party,
11  with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of
12  the relationship; (3) the defendant's intentional acts designed to disrupt the relationship; (4) actual
13  disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the
14  defendant's acts." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152, n. 6 (2004) (citation omitted).

15      Plaintiff alleges that these defendants, in an attempt to prevent litigation for malpractice,
16  falsified court documents in order to obtain a state guardian.  ECF No. 336 at 40.  Plaintiff further
17  alleges that defendants billed Medicare and Blue Shield for over 4 million dollars.  *Id.* at 41.  She
18  also claims that defendants breached their fiduciary duty to disclose information and that such
19  breaches were financially motivated.  *Id.*

20      These allegations fail to state a claim for interference with a contract and/or economic
21  advantage.  Plaintiff does not allege the existence of an economic or contractual relationship
22  between her and a third-party, nor has she alleged any economic damages.  Accordingly, this
23  claim must also be dismissed.

24                  7.  Fraudulent Concealment

25      Plaintiff also alleges a claim for fraudulent concealment against defendants Nelson, EMC,
26  Matthews, Verma, and Potter.  ECF No. 336 at 41-43.

27  /////

28  /////

1    "The elements of an action for fraud and deceit based on concealment are: (1) the

2    defendant must have concealed or suppressed a material fact, (2) the defendant must have been

3    under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally

4    concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have

5    been unaware of the fact and would not have acted as he did if he had known of the concealed or

6    suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff

7    must have sustained damage." *Boschma v. Home Loan Center*, *Inc*., 198 Cal. App. 4th 230, 248

8    (2011).  "In all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated

9    with particularity."  Fed. R. Civ. P. 9(b).  The allegations must be "specific enough to give

10   defendants notice of the particular misconduct which is alleged to constitute the fraud charged so

11   that they can defend against the charge and not just deny that they have done anything wrong."

12   *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  In addition to the "time, place and

13   content of an alleged misrepresentation," a complaint "must set forth what is false or misleading

14   about a statement, and . . . an explanation as to why the statement or omission complained of was

15   false or misleading."  *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993, n. 10 (9th Cir. 1999).  The

16   complaint must also name the persons who made the allegedly fraudulent statements.  *See Morris*

17   *v. BMW of N. Am., LLC*, 2007 WL 3342612, at *3 (N.D. Cal. Nov. 7, 2007) (citing *In re Glenfed,*

18   *Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 n. 7 (9th Cir. 1994) (en banc)).

19       Plaintiff alleges that defendant Potter "knowingly concealed the fraudulent ex parte

20   hearing of July 7, 2010 from Plaintiff and family," and that he was under a legal and ethical duty

21   to provide notice to plaintiff and her family.  ECF No. 336 at 41.  As for defendants Matthews

22   and Verma, plaintiff alleges that they owed a duty of care to the decedent, and that they

23   "knowingly and maliciously concealed information regarding their malpractice, medical battery,

24   negligence, and self-interest," and concealed "accurate information" to block the transfer of the

25   decent to Kindred Hospital Sacramento/Folsom.

26       These general allegations fail to comply with the enhanced pleading standard required for

27   stating a claim for fraud under Rule 9.  Although plaintiff does allege the specific information that

28   Potter allegedly concealed, plaintiff provides no allegations indicating that Potter failed to notify

1    plaintiff of the ex parte hearing "with the intent to defraud plaintiff." *See Boschma*, 198 Cal.

2    App. 4th at 248.  Plaintiff also fails to allege reliance.  "Reliance can be proven in a fraudulent

3    omission case by establishing that had the omitted information been disclosed, the plaintiff would

4    have been aware of it and acted differently." *Id*. at 250-251.  Plaintiff provides no allegations

5    demonstrating that she would have acted differently had she been provided notice of the hearing.

6         Plaintiff's general allegations that Verma and Matthews "maliciously concealed

7    information" and withheld "accurate information" also fall short of satisfying Rule 9's heightened

8    pleading standard.  Furthermore, plaintiff also fails to allege reliance as to these defendants'

9    omissions.  Plaintiff's complaint suggests that the defendant physicians made statements to hide

10   their negligence and medical malpractice, not to deceive plaintiff and induce her reliance.

11   Accordingly, plaintiff fails to state a claim for fraudulent concealment.

12              8.  Constructive Fraud

13        Plaintiff's eighth cause of action is for constructive fraud and is alleged against defendants

14   Nelson, EMC, Matthews, Verma, Kasza, Potter, Clark-Martin, Stansell and Merrifield.  ECF No.

15   336 at 43-46.

16        Under California law, "[c]onstructive fraud is a unique species of fraud applicable only to

17   a fiduciary or confidential relationship."  *Assilzadeh v. Cal. Fed. Bank*, 82 Cal. App. 4th 399, 415

18   (2000).   Under this theory of liability, "a fiduciary is liable to his principal for *constructive fraud*

19   even though his conduct is not actually fraudulent."  *Salahutdin v. Valley of California, Inc.*, 24

20   Cal. App. 4th 555, 562 (1994).  "[C]onstructive fraud comprises any act, omission or concealment

21   involving a breach of legal or equitable duty, trust or confidence which results in damages to

22   another even though the conduct is not otherwise fraudulent."  *Assilzadeh*, 82 Cal. App. 4th at

23   415.  "Thus, constructive fraud mirrors actual fraud but replaces the requirement of scienter with

24   the requirement of a fiduciary duty."  *Beco Dairy Automation, Inc. v. Global Tech Sys., Inc*., No.

25   CV–F12–1310 LJO SMS, 2012 WL 4052066, at *8 (E.D. Cal. Sept. 14, 2012).

26        Aside from plaintiff's conclusory statements that defendants owed her a duty of honesty,

27   plaintiff's complaint is completely devoid of any facts indicating that defendants Matthews,

28   Verma, Kasza, Clark-Martin, and Stansell owed her a fiduciary duty.  Although plaintiff does

14

1   allege that Potter was hired as her attorney, she fails to allege sufficient facts to state a claim for

2   constructive fraud against Potter.  Plaintiff simply alleges that "defendant Potter's fraudulent

3   Stipulation dated July 15, 2010, mirrors the same restrictive and harmful rules of Defendants

4   EMC and Nelson's memorandum, and is endorsed by defendants' Stansell, Merrifield, and Clark-

5   Martin's signatures." ECF No. 336 at 44.  Plaintiff does not, however, allege what information

6   was concealed from her or explain how the stipulation was fraudulent, nor does she explain how

7   she was harmed by the July 15 stipulation.  Accordingly, plaintiff has failed to state a claim for

8   constructive fraud.

9                   9.  Conspiracy

10         Plaintiff's ninth cause of action is for conspiracy against defendants Nelson, EMC,

11   Matthews, Verma, Wilms, Valcarenghi, Kasza, Clark-Martin, Boggs, Potter, Stansell, and

12   Merrifield.  ECF No. 336 at 46-47.

13         A conspiracy is not an independent cause of action, but is instead "a legal doctrine that

14   imposes liability on persons who, although not actually committing a tort themselves, share with

15   the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v.*

16   *Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994); *see also Entertainment Research Group,*

17   *Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997).  Thus, to properly state

18   a claim for imposing liability under a conspiracy basis, plaintiff must not only properly allege

19   facts showing the elements for the underlying cause of action, she must also satisfy the elements

20   for establishing conspiracy.  Liability for civil conspiracy generally requires three elements: (1)

21   formation of a conspiracy (an agreement to commit wrongful acts); (2) operation of a conspiracy

22   (commission of the wrongful acts); and (3) damage resulting from operation of a conspiracy. *Id*.

23   at 511.  A civil conspiracy is therefore activated by the commission of an underlying wrongful

24   act.  *Id*.

25         Plaintiff alleges that these defendants conspired to illegally abduct the decedent from her

26   family with perjury and fraudulent statements, and conspired to circumvent plaintiff's legal right

27   to provide informed consent for her mother.  ECF No. 336 at 46.  She further alleges that

28   "Merrifield sent a letter, dated October 20, 2010, the day of Decedent's wrongful death, stating

1    the temporary guardians were to remain in place, thereby keeping her position in place." *Id*.

2    Plaintiff further contends that these defendants' "conspiracy set and kept in motion all other

3    Cause of Actions [sic] as aforesaid herein, including intentional infliction of severe emotional

4    distress, elder abuse and wrongful death." *Id*. at 47.

5           As is the case with the vast majority of the claims, the conspiracy claim is predicated, at

6    least in part, on an injury sustained to the decedent.  Again, plaintiff cannot assert a conspiracy

7    claim on the decedent's behalf.

8           As for plaintiff's contention that these defendants conspired to deprive plaintiff of her

9    rights to provide informed consent for her mother, such a conclusory allegation is insufficient to

10   state a cause of action for conspiracy.  Furthermore, plaintiff also fails to tie her conspiracy claim

11   to an underlying cause of action.  Instead, she simply concludes that the "conspiracy set and kept

12   in motion all other" causes of action.  Plaintiff also does not allege any facts demonstrating an

13   agreement between the parties, nor does she allege the commission of wrongful acts in

14   furtherance of the agreement.  Plaintiff simply concludes that the named defendants conspired to

15   violate her right to provide informed consent, and identifies a single letter sent by defendant

16   Merrifield.  Such conclusory allegations fail to demonstrate the existence of a conspiracy.

17                    10.  Violation of California CCP Patient's Rights

18          Plaintiff alleges that all defendants violated California Code of Regulation, Title 22,

19   Section 70707 "when they intentionally isolated Decedent from her family . . ., and illegally

20   removed Decedent's designated health care decision maker.  ECF No. 336 at 47-48.  Plaintiff also

21   alleges that defendants violated section 70707 by committing fraud, lying, committing perjury,

22   and altering the decedent's records.  *Id*.

23          Plaintiff does not allege that she was ever a patient, and it is clear from the complaint that

24   the only patient at issue in the complaint was the decedent.  Thus, any rights that were violated

25   belong to the decedent and not to plaintiff.  As such, this claim must also be dismissed.

26                    11.  Intentional Infliction of Emotional Distress

27          Plaintiff's claim for intentional infliction of emotional distress is brought against all

28   defendants.  ECF No. 336 at 48.

"In order to establish a claim for intentional infliction of emotional distress under California law, [plaintiff is] required to show (1) that the defendant's conduct was outrageous, (2) that the defendant intended to cause or recklessly disregarded the probability of causing emotional distress, and (3) that the plaintiff's severe emotional suffering was (4) actually and proximately caused by defendant's conduct." *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004).  "Only conduct 'exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress' is actionable." *Brooks v. United States*, 29 F. Supp. 2d 613, 617-18 (N.D. Cal. 1998).  Where defendant's "conduct was directed primarily at" plaintiff's decedent, recovery is limited to "'the most extreme cases of violent attack, where there is some especial likelihood of fright or shock.'" *Christensen v. Superior Court*, 54 Cal. 3d 868, 905 (1991) (quoting *Ochoa v. Superior Court*, 39 Cal. 3d 159, 165 n. 5 (1985), *accord Coon v. Joseph*, 192 Cal. App. 3d 1269 (1987)).

Plaintiff alleges that defendants' conduct caused harm and the wrongful death of the decedent, thereby causing plaintiff severe emotional distress.  ECF No. 336 at 48.  She further claims that defendants' "conduct was intentional, extreme, outrageous and beyond all possible bounds of decency that is tolerated in a civilized society." *Id*.

As the complained of activity is not directed towards plaintiff, but to a third-party, to qualify as actionable conduct, defendants' activity against the decedent must be among "'the most extreme cases of violent attack.'" *Christensen*, 54 Cal. at 905 (quoting *Ochoa*, 39 Cal. 3d at 165 n.5).  In essence, the complaint alleges that procedures performed on the decedent were unnecessary, that the care provided was deficient, and that defendants impermissibly blocked the transfer of the decedent to a facility that could provide her with adequate care.  Such conduct is akin to medical malpractice and is not, as plaintiff in conclusory fashion suggests, tantamount to a violent attack or other extreme and outrageous conduct.  Accordingly, plaintiff's claim for intentional infliction of emotional distress must be dismissed.

12. <u>Wrongful Death</u>

Plaintiff's last cause of action is for wrongful death against all defendants.  ECF No. 336 at 23.

17

1    Wrongful death actions may be brought by a decedent's children. Cal. Civ. Proc. Code

2    § 377.60(a).  "The elements of the cause of action for wrongful death are the tort (negligence or

3    other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss

4    suffered by the heirs." *Quiroz v. Seventh Ave. Center*, 140 Cal. App. 4th 1256, 1263 (Cal. Ct.

5    App. 2006); *Wright v. City of Los Angeles*, 219 Cal. App. 3d 318, 344, 358 (Cal. Ct. App. 1990).

6    For a wrongful death action to survive a motion to dismiss, "the complaint must contain

7    allegations as to all elements of actionable negligence." *Van Horn v. Hornbeak*, 2009 WL

8    435104 (E.D. Cal. Feb. 19, 2009) (citing *Jacoves v. United Merchandising Corp.*, 9 Cal. App.

9    4th 88, 105 (1992)).  To allege professional negligence, plaintiff must allege (1) the duty of the

10   professional to use such skill, prudence, and diligence as other members of his profession

11   commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection

12   between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting

13   from the professional negligence. *Fuentes v. County of Madera*, 2006 WL 3087172 (E.D. Cal.

14   Oct. 30, 2006) (citing *Elcome v. Chin*, 110 Cal. App. 4th 310, 317 (Cal. Ct. App. 2003)).  In terms

15   of causation, a defendant's negligent act is only the cause of death where "in the absence of other

16   reasonable causal explanations, it becomes more likely than not that the injury was a result" of the

17   negligence. *Fuentes*, 2006 WL 3087172 (citing *Jennings v. Palomar Pomerado*

18   *Health Systems, Inc.,* 114 Cal. App. 4th 1108, 1118 (Cal. Ct. App. 2003)).

19   The various defendants assert several arguments, many specific to the individual

20   defendant, as to the complaint fails to state a claim for wrongful death.  The court addresses

21   various arguments below.

22                    a)    <u>Failure to Join Necessary Parties</u>

23   Defendants Kindred, Potter, Lew, Avdalovic, and Matthews argue that this court has

24   already determined that plaintiff cannot proceed on her claim for wrongful death without first

25   joining her siblings, which would defeat this court's diversity jurisdiction.[11]

26   /////

27   _____

28        [11]  Plaintiff's sisters are residents of California.

1    These defendants misinterpret the court's prior rulings.[12]

2         As noted above, on September 10, 2014, the undersigned recommended that the fourth

3    amended complaint's federal claims be dismissed for failure to state a claim and that the court

4    decline to exercise supplemental jurisdiction over the complaint's state law claims.  ECF No. 330.

5    Plaintiff filed objections to the findings and recommendations, indicating that she wanted to

6    abandon all claims on behalf of the decedent and proceed only on claims that were personal to

7    her, including a wrongful death claim.  ECF No. 333.

8         The assigned district judge adopted the findings and recommendations, but, in light of

9    plaintiff's representations, leave to amend was granted to allege state law claims personal to

10   plaintiff based on diversity jurisdiction.  ECF No. 334.  The order also noted that plaintiff may

11   encounter a hurdle to asserting a claim for wrongful death.  Specifically, the order observed that

12   "[f]ederal courts have held that in wrongful death actions absent heirs are considered necessary

13   parties. [citation].  It appears from the allegations of the complaint that the decedent's heirs are

14   residents of California and may not be jointed without defeating diversity jurisdiction."  ECF No.

15   332 at 3-4.  Although the court noted this potential issue, the court did not expressly hold that

16   plaintiff cannot allege a claim in this court without defeating diversity.  *See id*.  Rather, the court

17   simply identified one hurdle plaintiff may face in asserting a wrongful death claim.

18        Although plaintiff's siblings may be necessary parties, such a finding does not end the

19   inquiry.  In determining whether a case can proceed without a necessary party, a court must look

20   to Rule 19, which governs joinder of parties.  Rule 19 sets forth three-step inquiry: "1. Is the

21   absent party necessary (i.e., required to be jointed if feasible) under Rule 19(a)?  2. If so, is it

22   feasible to order that the absent party be joined?  3. If joinder is not feasible, can the case proceed

23   without the absent party, or is the absent party indispensable such that the action must be

24   dismissed?"  *Salt River Project Agr. Imp. And Power Dist. v. Lee*, 672 F.3d 1176 (9th Cir. 2012).

25   /////

26

27        [12]  Defendant Matthews does not advance any other argument in support of the wrongful
     death claim alleged against him.  As the court finds that this action can proceed with plaintiff's
28   siblings, Matthews's motion to dismiss is denied as to plaintiff's wrongful death claim.

1    Although federal courts have held that absent heirs are "necessary" parties, courts have also found

2    that where an absent heir's claim would be barred by the statute of limitations, the absent heir is

3    not indispensable.  *See Backer v. United States*, 2014 WL 4267500, at *2-3 (E.D. Cal. Aug. 29,

4    2014); *A.D. v. California Highway Patrol*, 2009 WL 733872, * at 4-5 (N.D. Cal Mar. 17, 2009);

5    *Estate of Burkhart v. United States*, 2008 WL 4067429, * 7-8 (N.D. Cal. Aug. 26, 2008).

6         Plaintiff's siblings are necessary parties, but as indicated by the court's prior order, joinder

7    would defeat diversity jurisdiction and therefore is not feasible.  However, it appears that any

8    wrongful death claim brought by plaintiff's siblings would be barred by the applicable statute of

9    limitations.  Since plaintiff's claim for wrongful death against the medical defendants is based on

10   their alleged malpractice, California Code of Civil Procedure section 340.5 provides the

11   applicable statute of limitations for claims against the medical care providers.  That section states:

12           In an action for injury or death against a health care provider based
             upon such person's alleged professional negligence, the time for the
13           commencement of action shall be three years after the date of injury
             or one year after the plaintiff discovers, or through the use of
14           reasonable diligence should have discovered, the injury, whichever
             occurs first. In no event shall the time for commencement of legal
15           action exceed three years unless tolled for any of the following: (1)
             upon proof of fraud, (2) intentional concealment, or (3) the presence
16           of a foreign body, which has no therapeutic or diagnostic purpose or
             effect, in the person of the injured person.
17

18   Cal. Civ. Proc. Code § 340.5.  As for a wrongful death claim against the defendants that are not

19   medical care providers, the applicable statute of limitations is two years.  Cal. Code. Civ. P. §

20   335.1.

21         The complaint alleges that the decedent died on October 20, 2010.  ECF No. 336 at 23.

22   As the three year statute of limitations has now passed, the absent heir's claims appear to be

23   barred by the applicable statute of limitations.  Accordingly, the court finds that these necessary

24   parties are not indispensable and that the claim can proceed in their absence.[13]

25   /////

26   /////

27   ───────────────

28        [13]  In any event, none of the defendants specifically argue that plaintiff's siblings, or any
     other absent heir, are an indispensable.

                                                    20

b)  Defendant Kindred Hospital

Kindred also argues that this court lacks jurisdiction over plaintiff's wrongful death claim because she asserts it in her capacity as the personal representative of the decedent's estate, and therefore she is considered a citizen of California under 28 U.S.C. 1332(c)(2).  ECF No. 339 at 8.  The complaint does allege that plaintiff is the personal representative of the decedent's estate.  ECF No. 336 at 1.  However, she does not assert her wrongful death claim in that capacity.  Thus, she is free to bring it as an heir to the decedent.  *See* Cal. Civ. Proc. Code § 377.60 (specifying that children of the decedent can bring a wrongful death claim).  Accordingly, Kindred's motion to dismiss should be denied as to plaintiff's wrongful death claim.

c)  Defendants Valcarenghi, Wilms, and Verma

Defendants Valcarenghi, Wilms, and Verma argue that plaintiff's wrongful death claim must be dismissed for failure to allege how any action or failures to act by these defendants caused the decedent's death.  ECF No. 341 at 19.  They contend that the fifth amended complaint fails to allege a proximate causal connection between the negligent conduct and the resulting injury.  *Id*.  These defendants contend that the complaint establishes that they treated plaintiff at EMC up until September 21, 2010, and the decedent then spent the next month at Kindred Hospital where she died on October 20, 2010.  *Id*.

"[I]t is a fundamental principle of tort law that there must be a legal duty owed to the person injured and a breach of that duty which is the proximate cause of the resulting injury."  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1206.  Although the determination as to whether an act is the proximate cause of an injury is generally a question of fact, "it is a question of law where the facts are uncontroverted and only one deduction or inference may reasonably be drawn from those facts."  *Id*.

The operative complaint alleges that Valcarenghi, Verma, and Wilms were licensed physicians that provided medical care to the decedent at EMC.  ECF No. 336 at 8-9.  Plaintiff claims that on May 4, 2010, a nurse misplaced a PICC line into the decedent's arm, which resulted in bruising and swelling.  Plaintiff alleges that Valcarenghi suspected a possible blood clot, and therefore prescribed high levels of anticoagulants.  *Id*. at 24-25.

21

1    Plaintiff further alleges that the decedent "died receiving anticoagulants at Defendant

2    Kindred Hospital Sacramento based on Dr. Dinesh Verma's falsified discharge assessment and

3    transfer orders on September 21, 2010." She also contends that Verma delayed performance of

4    an "urgent" tracheostomy for six days, and performed unnecessary and frequent bronchoscopies,

5    which damaged the lungs. *Id*. at 34-35.

6    As for Dr. Wilms, plaintiff alleges that he withheld "a necessary procedure," a

7    thoracentesis, on June 13, 2010." *Id*. at 35. She also claims that Wilms and Verma changed the

8    decedent's medications to medications that were known to harm the decedent. *Id*. at 38. She

9    further contends that all three of these physicians ordered excessive x-rays, which resulted in

10   radiation burns and loss of hair. *Id*. at 34.

11   Although plaintiff generally alleges that these physicians engaged in conduct that caused

12   harm to the decedent, aside from the purported false discharge assessment and transfer order, she

13   fails to allege that any of these act resulted in the decedent's death. Although plaintiff

14   specifically alleges that the decedent "died receiving anticoagulants at Defendant Kindred

15   Hospital Sacramento," these three defendants provided care at EMC. Furthermore, plaintiff

16   explicitly alleges that the decedent "survived the mal-practice of the intestinal bleed that was

17   noted to be due to blood thinners (anticoagulants)" prescribed by Valcarenghi. *Id*. at 49. Thus,

18   the excessive dose of anticoagulants administered by Valcarenghi was not the proximate cause of

19   the decedent's death. As for the unnecessary procedures and delay in performing a tracheostomy,

20   plaintiff only alleges that these actions caused harm. Plaintiff even concedes that the withheld

21   "thorenscentesis" was eventually performed and that [f]ollowing [the] procedure, Decedent's

22   heartrate came back to sinus rhythm (normal) at 80 BOM from the 130-140 BPM it had been for

23   hours, her breathing returned to normal, and she was able to rest."

24   The complaint is also devoid of any explanation for how Dr. Verma's alleged false

25   discharge assessment and transfer order was the proximate cause of the decedent's death.

26   Plaintiff fails to provide any factual allegations regarding how the discharge assessment and

27   transfer order were false, or how such false statements contributed to the decedent's death.

28   /////

22

1    Thus, there are no facts in the complaint that would permit a fact finder to conclude that

2    the acts of these defendants caused the decedent's death.

3                              d) Defendant Kasza

4    Defendant Kasza also argues that plaintiff's wrongful death claim fails for failure to allege

5    a proximate causal connection between Dr. Kasza's alleged negligence and the decedent's death.

6    ECF No. 347-1.  Plaintiff alleges that Dr. Kasza falsified the decedent's "medical records during

7    a 'Code Blue' on June 15, 2010 to imply that Decedent had aspired and then required CPR, when

8    in fact, Decedent was caused to aspire during the aggressive CPR (witnessed by Plaintiff and

9    others), and then re-intubated, taken to ICU, and again placed on a ventilator."  ECF No. 336 at 9-

10   10.  Plaintiff further alleges that after Kasza admitted the decedent to the ICU, he gave her

11   "medications that were known to cause her harm."  *Id.* at 45.

12   These allegations simply demonstrate that in June 2010 Kasza performed aggressive CPR,

13   resulting in intubation, and that he prescribed "medications known to cause harm."  There are no

14   factual allegations that, if accepted as true, would permit a jury to find that Kasza's conduct was

15   the proximate cause of the decedent's death, which occurred four months later.  Indeed, plaintiff

16   does not explicitly contend that this conduct caused the decedent's death.  Accordingly, the

17   wrongful death claim against defendant Kasza must be dismissed.

18                              e)  Defendants Lew and Avdalovic

19   Defendant's Lew and Avdalovic argue that plaintiff's claim for wrongful death must be

20   dismissed because plaintiff has failed to allege any loss beyond her severe emotional distress.

21   ECF No. 342-1.  "A plaintiff in a wrongful death action is entitled to recover damages for his own

22   pecuniary loss, which may include (1) the loss of the decedent's financial support, services,

23   training and advice, and (2) the pecuniary value of the decedent's society and companionship—

24   but he may not recover for such things as the grief or sorrow attendant upon the death of a loved

25   one, or for his sad emotions, or for the sentimental value of the loss."  *Quiroz v. Seventh Ave.*

26   *Center*, 140 Cal. App. 4th 1256, 1264 (2006).

27   Although the complaint is replete with references to the emotional distress plaintiff

28   suffered on account of her mother's death, she does not only seek damages for her emotional

                                              23

1    suffering.  Plaintiff specifically seeks damages for the "loss of society and companionship,"

2    which are available damages.  ECF No. 336 at 50; *Quiroz*, 140 Cal. App. 4th at 1264.

3    Accordingly, defendants Lew and Avdalovic's motion as to plaintiff's wrongful death claim must

4    be denied.

5                    e) Defendants Potter, Clark-Martin, and Stansell

6           Defendants Potter, Clark-Martin, and Stansell also argue that plaintiff's wrongful death

7    claims against them fails because the operative complaint does not allege that they engaged in any

8    conduct that caused plaintiff's death.  ECF No. 340-1 at 31; ECF No. 343 at 7-8; ECF No. 344-1

9    at 14.

10          Here, the complaint fails to allege a direct link between Potter, Clark-Martin, and

11   Stansell's conduct and the decedent's death.  These defendants are not healthcare providers, but

12   rather all acted as counsel in relation to the TRO and conservatorship proceeding.

13          Plaintiff alleges that defendant Clark-Martin committed perjury in relation to the state

14   court proceeding, and initiated a "**Malicious Prosecution**/Strategic Lawsuit Against Public

15   Participation (S.L.A.P.P.) against Plaintiff Rickie L. Chipman and the family of Decedent Mary

16   A. Martin."  ECF No. 336 at 10-11.  She further claims that defendant Stansell was appointed by

17   the state court judge to represent the decent in regards to the TRO and conservatorship

18   proceedings.  *Id*. at 11.  As far as the court can discern, Stansell allegedly breach her duty to the

19   decedent by only visiting her three times and committing perjury in relation to the state court

20   proceeding by stating that the decedent "doesn't speak to me your honor."  *Id*. at 11-12.  Plaintiff

21   further contends that Stansell "withheld her own October 8, 2010 Declaration, . . . [that]  should

22   have immediately allowed the rightful release of Decedent and return her to the care of Plaintiff

23   and her family to promote Decedent's well-being."  *Id*. at 12.  As for Potter, the complaint alleges

24   that he was retained as counsel to obtain a conservatorship on behalf of plaintiff's sister and the

25   family.  *Id*. at 14.  "Potter breached his duty by collaborating with Defendant Julie Clark-Martin

26   prior to the July 15th hearing to further enforce" the TRO.  *Id*.

27   /////

28   /////

                                                    24

1    These factual allegations fail to demonstrate that any of these defendants contributed to

2 the decedent's death.  Rather, their involvement was limited to the state court proceedings, and

3 did not specifically involve treating decedent's medical condition.

4    Moreover, plaintiff fails to demonstrate that defendants Potter and Clark-Martin owed any

5 duty to the decedent.  The complaint specifically alleges that Potter was plaintiff's counsel, and

6 that Clark-Martin represented EMI's interest in the TRO and conservatorship matter.  Neither

7 represented the decedent or owed any duty to her.

8    Lastly, plaintiff's wrongful death claims against these defendants stems, at least in part,

9 from statements made in state court, and such statements are protected by California's litigation

10 privilege.  California Civil Code section 47(b) provides that communications made in or related to

11 judicial proceedings are absolutely immune from tort liability.  Cal. Civ. Code § 47(b).  The

12 California Supreme Court explains that the purpose of the privilege is "to afford litigants . . . the

13 utmost freedom of access to the courts without fear of being harassed subsequently by derivative

14 tort actions." *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990).  "The litigation privilege applies

15 to any communications (1) made in a judicial proceeding; (2) by litigants or other participants

16 authorized by law; (3) to achieve the objects of the litigation; (4) that have some connection or

17 logical relation to the action." *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1077

18 (N.D. Cal. 2006) (citing *Silberg*, 50 Cal.3d at 212). Once these requirements are met, section

19 47(b) operates as an absolute privilege. *Silberg*, 50 Cal.3d at 216. "Any doubt about whether the

20 privilege applies is resolved in favor of applying it." *Kashian v. Harriman*, 98 Cal. App. 4th 892,

21 913 (2002).

22    Plaintiff claims that both Stansell and Clark-Martin made false statements to the state

23 court in relation to the state court proceedings.  Even if such statements were somehow

24 responsible for the decedent's death, they would nevertheless be protected by California's ligation

25 privilege.

26    For all of these reasons, plaintiff fails to state a wrongful death claim against defendants

27 Potter, Clark-Martin, and Stansell.

28 /////

25

D. <u>Leave to Amend</u>

Plaintiff has now submitted six different complaints.  Although the court only addressed the sufficiency of the allegation in plaintiff's first and fourth amended complaint, defendants have moved to dismiss the other amended complaints due to deficiencies necessitating multiple amendments.  These motions provided plaintiff with notice of the pleading requirements and identified various deficiencies in the complaints.  Although plaintiff has been given numerous opportunities to address the arguments raised by defendants, she continues to submit pleadings that are disorganized, unintelligible, and lacking sufficient allegations to most of her purported causes of actions, and claims that are simply barred as a matter of law.  Accordingly, yet further leave to amend is unwarranted.

IV.    <u>Plaintiff's Motion for Default Judgment and Merrifield's Motion to Set Aside Default</u>

Also pending before the court is plaintiff's motion for default judgment against defendant Kimberly Merrifield.  ECF No. 372.  Merrifield, who had not previously appeared in this case, filed an opposition and a related motion to set aside the clerk's entry of default.  ECF Nos. 375, 388.  Merrifield argues that the clerk's entry of her default should be set aside, and plaintiff's motion for default judgment denied, because she was never properly served.  *Id*. at 2.  As explained below, the record demonstrates that Merrifield was not properly served in compliance with Federal Rule of Civil Procedure 4, and therefore her motion to set aside entry default should be granted and plaintiff's motion for default judgment denied.

Plaintiff original complaint did not name Merrifield as a defendant to this action.  ECF No. 1.  It was not until October 29, 2014, more than three years after this action commenced, that plaintiff filed her fifth amended complaint, naming Merrifield as a defendant to this action for the first time.  ECF No. 336.  On December 2, 2014, plaintiff filed a proof of service as to Merrifield.  ECF No. 362.  The proof of service's caption page indicates that defendant Merrifield "was served her copy of the complaint . . . on October 29, 2014."  ECF No. 2.  The proof of service form does not identify the specific documents that were served, but indicates that Kathryn Tisdale, who is not a registered California process server, personally served documents on Merrifield on October 29, 2014.  ECF No. 362-1.

26

1    On December 2, 2014, plaintiff requested the entry of Merrifield's default (ECF No. 363),

2    which the clerk entered on December 4, 2014.  ECF No. 371.  Plaintiff then moved for default

3    judgment (ECF No. 372), and Merrifield subsequently moved to set aside her default.  ECF No.

4    375.

5    Under Rule 55(a), the court must enter default against a party who has "failed to plead or

6    otherwise defend."  The court also has the power to set aside the entry of default "for good

7    cause."  Fed. R. Civ. P. 55(c).  The U.S. Court of Appeals for the Ninth Circuit treats the standard

8    for good cause to set aside an entry of default under Rule 55(c) the same as the excusable neglect

9    standard for relief from judgment under Rule 60(b) (1).  *TCI Group Life Ins. Plan v. Knoebber*,

10   244 F.3d 691, 697 (9th Cir. 2001); *Franchise Holding II, LLC v. Huntington Restaurants Group,*

11   *Inc.*, 375 F.3d 922, 925–26 (9th Cir. 2004).  In deciding whether good cause exists to set aside

12   default, the court considers: "(1) whether the plaintiff will be prejudiced, (2) whether the

13   defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the

14   default."  *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011) (quoting

15   *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir.1984)).  This tripartite test is "disjunctive," meaning that

16   the district court is free to deny the motion if any of these three factors is shown to exist.

17   *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108–09 (9th Cir. 2000).

18   Of significance here, "[a] federal court does not have jurisdiction over a defendant unless

19   the defendant has been served properly under Fed. R. Civ. P. 4."  *Direct Mail Specialists, Inc. v.*

20   *Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).  "Entry of default must be set

21   aside if the defendant was not served properly."  *Hale v. Evidencia Display*, 2015 WL 4624881,

22   at *2 ( C.D. Cal. Aug. 3, 2015).

23   Defendant Merrifield does not dispute that she received a copy of the fifth amended

24   complaint from plaintiff.  She explains, however, that she did not take any action upon receiving a

25   copy of the complaint because there was no summons included with the copy of the complaint.

26   ECF No. 375 at 3.  She argues that default should be set aside because: (1) no summons was ever

27   issued by the court authorizing service on her; (2) no summons was delivered with the fifth

28   /////

27

1    amended complaint; and (3) service of process was defective and therefore this court lacks

2    jurisdiction.  *Id*. at 375.

3         Under the Federal Rules of Civil Procedure, to effect service of process "[a] summons

4    must be served with a copy of the complaint."  Fed. R. Civ. P. 4(c)(1).  It is the plaintiff's

5    responsibility to furnish the necessary copies of the summons and complaint to the person who

6    makes service.  *Id*.  Although "Rule 4 is a flexible rule that should be liberally construed so long

7    as a party receives sufficient notice of the complaint," *United Food & Commercial Workers*

8    *Union v. Alpha Beta Co.*, 376 F.2d 1371, 1382 (9th Cir. 1984), "without substantial compliance

9    with Rule 4 'neither actual notice nor simply naming nor naming the defendant in the complaint

10   will provide personal jurisdiction,'" *Direct Mail Specialist, Inc.*, 840 F.2d at 688.

11        Plaintiff does not, and cannot, dispute that she failed to serve defendant Merrifield with a

12   copy of a summons.  Review of the court's docket indicates that a summons was never issued as

13   to defendant Merrifield.  Although the clerk generally issues summons for each defendant upon

14   the filing of a complaint and payment of fees, it was ultimately plaintiff's responsibility to obtain

15   a copy of the summons as to Merrifield.  Fed. R. Civ. P. 4(b).[14]  There is no indication that

16   plaintiff ever attempted to obtain a summons for Merrifield from this court.  As plaintiff failed to

17   properly serve defendant Merrifield, her default must be set aside.  *Hale*, 2015 WL 4624881, at

18   *2

19        In any event, the court finds good cause exists to set aside default.  Merrifield moved to

20   set aside entry of default less than a week after her default was entered.  Although this action has

21   been pending for almost four years, Merrifield cannot be blamed for the significant delays in this

22   action.  Indeed, she was first named as a defendant in plaintiff's fifth amended complaint, more

23   than three years after plaintiff commenced this action.

24   /////

25

26        [14]  Fed. R. Civ. P. 4(b) provides as follows: "On or after filing the complaint, the plaintiff
     may present a summons to the clerk for signature and seal.  If the summons is properly
27   completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant.  A
     summons—or a copy of the summons that is addressed to multiple defendants—must issue for
28   each defendant to be served."

1      Furthermore, the court agrees with Merrifield that she may have meritorious defenses to

2  plaintiff's claims.  As discussed above, the majority of plaintiff's claims are brought in plaintiff's

3  capacity as personal representative for the decedent, and such claims cannot be asserted in this

4  court without defeating diversity jurisdiction.

5      Lastly, Merrifield is not culpable for the entry of default.  Plaintiff failed to obtain a

6  summons from this court and effectuate proper service on Merrifield.  Accordingly, Merrifield is

7  not responsible for the entry of default.  Therefore, defendant Merrifield's motion to set aside

8  default should be granted, and plaintiff's motion for default judgment denied.

9  V.     Plaintiff's Request to Subpoena Sealed Documents

10      Plaintiff requests the court to subpoena documents that were filed under seal in the Butte

11  County Superior Court.  ECF No. 337.  Plaintiff explains that she was not permitted to attend the

12  July 7, 2010 ex parte hearing held in the Butte County Superior Court relating to the TRO and

13  appointment of a conservatorship, and that the evidence submitted at this hearing has been filed

14  under seal by a state court judge.  *Id*. at 2.  Plaintiff claims that the sealed documents are "critical

15  for oral argument and discovery with regard to the initial perjury that led to the wrongful death of

16  Plaintiff's mother . . . and the Intentional Infliction of Severe Emotion Distress to Plaintiff."  *Id*.

17  at 2.[15]

18      Pursuant to Federal Rule of Civil Procedure 45, a subpoena must issue from the court in

19  which the action is pending.  Fed. R. Civ. P. 45(a)(1)(D)(2).  "The clerk must issue a subpoena,

20  signed but otherwise in blank, to a party who requests it.  That party must complete it before

21  service."  Fed. R. Civ. P. 45(a)(1)(D)(3).  If the plaintiff intends to serve a subpoena that

22  commands the production of documents, prior to serving the subpoena the party must serve notice

23  and a copy of the subpoena on each party to the suit.  Fed. R. Civ. P 45(a)(1)(D)(4).  A court may

24  hold a party that fails to comply with its subpoena without adequate excuse in contempt of court.

25  Fed. R. Civ. P. 45(g).

26

27      [15]  Although the issue is not presently before the court, it is worth noting that the sealed
documents may not be relevant to this action as plaintiff has failed to state claims for perjury and
28  intentional infliction of emotional distress.

1    Plaintiff's request indicates that she has been unable to obtain the sealed documents

2    despite her and her family's multiple requests for the documents.  ECF No. 337 at 2.  Plaintiff,

3    however, does not claim that she obtained a subpoena from the clerk of this court or that she

4    served the appropriate party with a subpoena.  Thus, it appears that plaintiff, rather than following

5    the procedures set forth in the Federal Rules of Civil Procures for subpoenaing documents from a

6    third party, simply wants this court to obtain discovery on her behalf.  It is not the role of the

7    court to conduct discovery on behalf of plaintiff.  Instead, she must follow the applicable rules,

8    which she has failed to do.  Accordingly, plaintiff's request is denied without prejudice.

9    V.    CONCLUSION

10    Accordingly, it is hereby ORDERED that plaintiff's request to subpoena state court

11   documents (ECF No. 337) is denied.

12    Further, it is RECOMMENDED that:

13    1.  Defendant Kindred's motion to dismiss (ECF No. 338) be granted in part, and all of

14   plaintiff's claims against Kindred, with the exception of her wrongful death claim, be dismissed

15   without leave to amend.

16    2.  Defendant Lew and Avdalovic's motion (ECF No. 342) be granted in part, and all of

17   plaintiff's claims against Lew and Avdalovic, with the exception of her wrongful death claim, be

18   dismissed without leave to amend.

19    3.  Defendant Matthews's motion (ECF No. 345) be granted in part, and all of plaintiff's

20   claims against Matthews, with the exception of her wrongful death claim, be dismissed without

21   leave to amend.

22    4.  Defendant Potter, Valcarenghi, Wilms, Verma, Clark-Martin, Stansell, and Kasza's

23   motions (ECF Nos. 340, 341, 343, 344, 347) be granted and plaintiff's claims against these

24   defendants be dismissed without leave to amend.

25    5.  Plaintiff's motion for default judgment against defendant Merrifield (ECF No. 372) be

26   denied.

27   /////

28   /////

30

6. Defendant Merrifield's motion to set aside default (ECF No. 375) be granted, and her default be set aside.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 11, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE