1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   RICKIE L. CHIPMAN,                      No. 2:11-cv-2770-TLN-EFB PS

11            Plaintiff,

12        v.                                 FINDINGS AND RECOMMENDATIONS

13   MARCIA F. NELSON, M.D., ENLOE
     MEDICAL CENTER, JOSEPH M.
14   MATTHEWS, M.D., GERARD R.
     VALCARENGHI, M.D., DALE J.
15   WILMS, M.D., DINESH VERMA, M.D.,
     ATTILA KASZA, M.D., JANE
16   STANSELL, DIRK POTTER, JULIE
     CLARK-MARTIN, BRENDA BOGGS
17   HARGIS, KINDRED HOSPITAL
     SACRAMENTO, EVA LEW, M.D.,
18   MARK AVDOLAVIC, M.D., and DOES 1
     through 25,
19
              Defendants.
20

21
          This case is before the court on defendant Joseph Matthews's motion for summary
22
     judgment.[1] ECF No. 554. Defendant Enloe Medical Center has filed a joinder in Matthews's
23
     motion. ECF No. 555. For the following reasons, it is recommended that the motion be granted.[2]
24

25        [1] This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to
26   Eastern District of California Local Rule 302(c)(21). *See* 28 U.S.C. § 636(b)(1).

27        [2] The court determined that oral argument would not materially assist in the resolution of
     the pending motion and the matter was ordered submitted on the briefs. *See* E.D. Cal. L.R.
28   230(g).

                                          1

I.      Procedural History and Factual Background

This action arises out of a dispute between plaintiff Rickie Chipman ("plaintiff") and defendants over medical care provided to plaintiff's mother, Mary A. Martin (the "decedent"). After extensive motion practice, plaintiff's only remaining claim is for wrongful death against defendants Dr. Joseph Matthews and Enloe Medical Center ("Enloe"). *See* ECF Nos. 152, 408, 545, 548, 552. Plaintiff claims that Dr. Matthews was negligent in providing treatment to the decedent and that Enloe is vicariously liable for Dr. Matthews's conduct. *See* ECF No. 336.

The decedent was admitted to Enloe Medical Center on May 3, 2010, with complaints of right shoulder pain, fever, generalized weakness, and concerns of sepsis. Declaration of Brian John Waddle, M.D., ISO Def. Joseph Matthews's Mot. Summary J. (ECF No. 554-5) at 39-43. At the time of admission the decedent, who was 80 years old, was assessed with a urinary tract infection, acute encephalopathy, diabetes, hyponatremia, hyperchloremia, Parkinson disease, dementia, hypertension, dehydration, oral yeast, constipation, pulmonary infiltrate, severe sepsis, and a grade 2 decubitus ulcer in the sacral region. ECF No. 554-5 at 39-40. Her physician, former defendant Dr. Gerard Valcarenghi, noted that her prognosis was not good and expressed his opinion that the family's expectations seemed unrealistic. *Id*. at 40.

Dr. Matthews first examined the decedent on May 12, 2010, at the request of Dr. Valcarenghi. *Id*. at 34-35. At that time, the decedent had previously experienced three documented episodes of gastrointestinal bleeding from an unknown source. *Id*. at 34. The following day, Dr. Matthews performed a colonoscopy on the decedent. *Id*. at 68-69. The preoperative diagnosis was clonic bleeding thought to be due to diverticulosis.[3] *Id*. at 68. The findings from the procedure included moderate diverticulosis in the rectum, rectosigmoid colon, and sigmoid colon with no bleeding, and a polypoid lesion in the area of the cecum. *Id*. at 68. Dr. Matthews' postoperative diagnosis was clonic bleeding thought to be due to diverticulosis with diverticulosis and clonic polyp in the area of the cecum. *Id*.

/////

---

[3] Diverticulosis is the presence of saclike pouches in the intestine. *The Merck Manual of Diagnosis and Therapy*, 176 (19th ed. 2011).

2

1    On May 19, 2010, Dr. Matthews performed an exploratory laparotomy in which part of

2    the decedent's jejunum was removed and a gastrostomy tube was placed. *Id*. at 61-63. Findings

3    included an impressive "amount of diverticulosis in the jejunum with multiple diverticular with

4    large blood vessels penetrating into the diverticulum." *Id*. at 61. Specimens from the small

5    bowel and left colon were sent to pathology for testing, which confirmed a diagnosis of extensive

6    diverticulosis and hemorrhage in the small bowel and extensive diverticulosis in the left colon.

7    *Id*. at 55.

8         On July 9, 2010, Dr. Matthews replaced a clogged gastric tube (*id*. at 72) and performed

9    an operation to address the separation of a thoracic wound (*id*. at 73). Three days later, he

10   inserted a central line in one of the decedent's veins. *Id*. at 74. The decedent's medical records

11   also show that Dr. Matthews performed several debridements[4] on the decedent's decubitus ulcer

12   between June 5 and September 3, 2010. *Id*. at 64-67, 70-71, 76-79. On September 19, 2010,

13   nursing staff called Dr. Matthews to replace a failed gastric tube. *Id*. at 80. He placed a

14   replacement feeding gastric tube into the decedent's abdominal wall, and the treatment record

15   reflects that the decedent tolerated the procedure well. *Id*.

16        No further treatment was provided by Dr. Matthews, and on September 21, 2010, the

17   decedent was transferred to Kindred Hospital of Sacramento. *Id*. at 102-106. The decedent died

18   at Kindred Hospital on October 20, 2010. *Id*. at 100, 109-111.

19   II.    Summary Judgment Standards

20        Summary judgment is appropriate when there is "no genuine dispute as to any material

21   fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary

22   judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

23   to the determination of the issues in the case, or in which there is insufficient evidence for a jury

24   to determine those facts in favor of the nonmovant. *Crawford–El v. Britton*, 523 U.S. 574, 600

25   (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50 (1986); *Nw. Motorcycle Ass'n v.

26   U.S. Dep't of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir. 1994). At bottom, a summary judgment

27
         _____
         [4] Debridement is the removal of dead tissue or wound contaminants. Merck Manual
28   3196.

3

1    motion asks whether the evidence presents a sufficient disagreement to require submission to a

2    jury.

3           The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

4    or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Thus, the rule functions to

5    "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

6    trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

7    (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

8    under summary judgment practice, the moving party bears the initial responsibility of presenting

9    the basis for its motion and identifying those portions of the record, together with affidavits, if

10   any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

11   U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

12   party meets its burden with a properly supported motion, the burden then shifts to the opposing

13   party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

14   *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

15          A clear focus on where the burden of proof lies as to the factual issue in question is crucial

16   to summary judgment procedures.  Depending on which party bears that burden, the party seeking

17   summary judgment does not necessarily need to submit any evidence of its own.  When the

18   opposing party would have the burden of proof on a dispositive issue at trial, the moving party

19   need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

20   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

21   which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U .S. at

22   323–24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

23   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

24   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

25   should be entered, after adequate time for discovery and upon motion, against a party who fails to

26   make a showing sufficient to establish the existence of an element essential to that party's case,

27   and on which that party will bear the burden of proof at trial.  *See id*. at 322.  In such a

28   /////

1    circumstance, summary judgment must be granted, "so long as whatever is before the district

2    court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id*. at 323.

3         To defeat summary judgment the opposing party must establish a genuine dispute as to a

4    material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that

5    is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at

6    248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

7    will properly preclude the entry of summary judgment."). Whether a factual dispute is material is

8    determined by the substantive law applicable for the claim in question. *Id*. If the opposing party

9    is unable to produce evidence sufficient to establish a required element of its claim that party fails

10   in opposing summary judgment. "[A] complete failure of proof concerning an essential element

11   of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S.

12   at 322.

13        Second, the dispute must be genuine. In determining whether a factual dispute is genuine

14   the court must again focus on which party bears the burden of proof on the factual issue in

15   question. Where the party opposing summary judgment would bear the burden of proof at trial on

16   the factual issue in dispute, that party must produce evidence sufficient to support its factual

17   claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

18   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit

19   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

20   for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to

21   demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

22   that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,

23   477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

24        The court does not determine witness credibility. It believes the opposing party's

25   evidence, and draws inferences most favorably for the opposing party. *See id*. at 249, 255;

26   *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the

27   proponent must adduce evidence of a factual predicate from which to draw inferences. *American*

28   *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

1  dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at

2  issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

3  Cir. 1995). On the other hand, "[w]here the record taken as a whole could not lead a rational trier

4  of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475

5  U.S. at 587 (citation omitted); *Celotex*, 477 U.S. at 323 (if the evidence presented and any

6  reasonable inferences that might be drawn from it could not support a judgment in favor of the

7  opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking any

8  genuine dispute over an issue that is determinative of the outcome of the case.

9  III.    Discussion

10       Defendant Matthews move for summary judgment on plaintiff's wrongful death claim,

11  arguing that plaintiff has failed to establish (1) a breach of applicable standard of care and (2) that

12  his conduct caused the decedent's death. ECF No. 554-1 at 14-20. Enloe joins in Matthews's

13  motion, arguing that since plaintiff's wrongful death claim against it is premised on vicarious

14  liability, it is entitled to summary judgment for the same reasons Matthews is entitled to summary

15  judgment.[5] ECF No. 555. Plaintiff opposes Matthews's motion and Enloe's joinder. ECF No.

16  557.

17       Wrongful death actions may be brought by a decedent's children. Cal. Civ. Proc. Code

18  § 377.60(a). "The elements of the cause of action for wrongful death are the tort (negligence or

19  other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss

20  suffered by the heirs." *Quiroz v. Seventh Ave. Center*, 140 Cal. App. 4th 1256, 1263 (Cal. Ct.

21  App. 2006); *Wright v. City of Los Angeles*, 219 Cal. App. 3d 318, 344, 358 (Cal. Ct. App. 1990).

22  To succeed on a claim for professional negligence, plaintiff must establish (1) the duty of the

23  professional to use such skill, prudence, and diligence as other members of his profession

24  commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection

25

26       [5] Enloe also argues that it is entitled to summary judgment because it is not vicariously
liable for the acts or omissions of Dr. Matthews because he was an independent contractor. This
27  argument, however, was not raised in Matthews's motion and Enloe did not file its own motion
for summary judgment. Instead, it elected to file only a joinder in Matthews's motion.
28  Accordingly, the court only addresses the arguments raised in Matthews's motion.

between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional negligence. *Fuentes v. County of Madera*, 2006 WL 3087172 (E.D. Cal. Oct. 30, 2006) (citing *Elcome v. Chin*, 110 Cal. App. 4th 310, 317 (Cal. Ct. App. 2003)).

Under California law, "medical personnel are held in both diagnosis and treatment to the degree of knowledge and skill ordinarily possessed and exercised by members of their profession in similar circumstances." *Hutchinson v. United States*, 838 F.2d 390, 392-92 (9th Cir. 1988) (citing *Landeros v. Flood*, 17 Cal. 3d 399, 408 (1976)); *see Barris v. County of Los Angeles*, 20 Cal. 4th 101, 108 (1999) ("The standard of care in a medical malpractice case requires that medical service providers exercise that . . . degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances."). "The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proven by their testimony." *Hanson v. Grode*, 76 Cal. App. 4th 601, 606-607 (1999). "When a defendant moves for summary judgement and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." *Powell v. Kleinman*, 151 Cal. App. 4th 112, 123 (2007).

In addition to establishing a breach of the applicable standard of care, a plaintiff is required to establish that the defendant's breach was a cause-in fact of the injury. *Jennings v. Palomar Pomerado Health Systems*, 114 Cal. App. 4th 1108, 1118 (2003). "To be a cause in fact, the wrongful act must be a substantial factor in bringing about the death." *Bromme v. Pavitt*, 5 Cal. App. 4th 1487, 1502 (1992). Generally, a defendant's "negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent." *Id*.

"[C]ausation must be proven within a reasonable medical probability based on competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case. That there is a distinction between a reasonable medical 'probability' and a medical 'possibility' needs little discussion . . . . A possible cause only becomes 'probable' when, in the absence of other

reasonable causal explanation, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury." *Id*. Accordingly, in order for plaintiff to show that the decedent's death was caused by the Dr. Matthews's medical negligence, plaintiff must establish a "reasonable medical probability" that Matthew's negligence was sufficient of itself to result in the decedent's death. *See Bromme*, 5 Cal. App. 4th at 1498-99.

In support of his motion for summary judgment, Dr. Matthews submits the declaration of Dr. John Waddle, who is certified by the American Board of Surgery and licensed to practice medicine in California.[6] ECF No. 554-5 ¶ 2, Ex. A. Based on his review of relevant excerpts of the decedent's records from Enloe and Kindred Hospital (*id*. ¶ 5), Dr. Waddle concluded that "Dr. Matthews satisfied the applicable standard of care at all times in the course of his treatment of the decedent and no evidence of any substandard care exists." *Id*. ¶ 7. Specifically, he opines that each debridement of the decedent's ulcer was appropriate and within the standard of care. *Id*. ¶ 7b. He further states that Dr. Matthews acted within the standard of care in resecting a portion

---

[6] Plaintiff states that she reserve the right to depose Dr. Waddle as he has "suspiciously not addressed" certain medical records that plaintiff contends are "crucial to exposing the sub-standard care and contribution to wrongful death by Matthews and/with EMC." ECF No. 557 at 5; *see also* ECF No. 557-16 at 16, 18-19. She also requests that "no summary judgment or dismissals [be] considered" until she obtains sealed documents from the Butte County Superior Court. *Id*. at 13

Plaintiff, however, has not complied with Rule 56(d) to request the consideration of the motion be deferred. Fed. R. Civ. P. 56(d) (permitting a party opposing a motion for summary judgment to request an order deferring consideration of the motion and permitting the party to conduct additional discovery). Even if her statement were construed as a request under Rule 56(d), she has failed to establish that such relief is appropriate under the applicable standard. Rule 56(d) requires a party to show by affidavit or declaration "the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). The party must also demonstrate that "there is some basis for believing that the information sought actually exists." *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n. 5 (9th Cir. 2009). Plaintiff has failed to provide any explanation for how deposing Dr. Waddle will lead to the discovery of facts that would preclude summary judgment. The same is true for the sealed court documents. Furthermore, the court previously denied plaintiff's motion to compel the production of the documents more than a year ago. ECF No. 522. Plaintiff's motion to compel indicated that the documents were related to the appointment of a conservatorship to make medical decisions for the decedent. *See* ECF No. 473. Plaintiff has not explained how these court documents pertain to the inquiry presently before the court, Dr. Matthews's treatment of the decedent.

of the decedent's bowel and placing a gastrostomy tube (*id*. ¶ 7c), and inserting a central line to manage the decedent's nutrition (*id*. ¶ 7d). He also concludes that contrary to plaintiff's contention, Dr. Matthews was not responsible for the decedent being on anticoagulants.[7] *Id*. ¶ 7e.

Lastly, Dr. Waddle concluded that Dr. Matthews did not cause or contribute to the decedent's death. He explains that the "resection of the small bowel and placement of a gastrostomy tube by Dr. Matthews on May 19, 2010 occurred five months prior to her death." *Id*. ¶ 8a. In his experience, "complications from such surgery manifest long before five months, and if this surgery had played a role in the decedent's death then she would not have lived for so long." *Id*. He also concludes that debridements performed by Dr. Matthews and the insertion of a central line in "the decedent had no causal relationship" to the decedent's death. *Id*. ¶ 8b-c. He explains that "the decedent's death was caused by kidney and heart problems that she gradually developed at Kindred Hospital," and that resection of the small bowel, debridements, and insertion of the central line could not have caused the decedent's renal and cardiac failures. *Id*. ¶ 8a-c.

Plaintiff's opposition is supported only by her own opinion that Dr. Matthews breached the applicable standard of care and was responsible for the decedent's death. *See* ECF Nos. 557, 557-1, 557-16. Plaintiff, however, fails to establish that she is a medical expert competent to provide an opinion regarding the "degree of skill, knowledge and care ordinarily possessed and exercised by members of [Dr. Matthews's] profession under similar circumstances." *See Barris*, 20 Cal. 4th at 108. Accordingly, her statements are insufficient to create a genuine issue as to whether Dr. Matthews breach the applicable standard of care and whether such breach was the cause of the decedent's death.

However, after Matthews's reply highlighted plaintiff's failure to produce expert evidence, plaintiff filed a surreply in which she requests the court consider a previously submitted

---

[7] Plaintiff's fifth amended complaint alleges that the decedent was unnecessarily administered anticoagulants, which led, or at the very least contributed, to her death. *See* ECF No. 336.

document containing an opinion from Dr. Vincent Mazzarella.[8]  ECF No. 561 at 2.

Dr. Mazzarella's declaration provides that he is board certified in general surgery and licensed to

practice medicine in California.  ECF No.435-5 ¶ 1.  He reviewed the decedent's medical records

regarding the care of decedent at Enloe between May and September 2010 (*id*. ¶ 2), and provides

many opinions that are critical of several components of the care the decedent received at Enloe.[9]

*See generally* ECF No. 435-5.  As for Dr. Matthews, Dr. Mazzarella suggests that the May 19

exploratory laparotomy performed by Dr. Matthews was unnecessary.  He states that the

"indications for the surgery in the patient are not clear to me, and I believe an error in diagnosis,

mistaking hemodilution anemia for severe active bleeding led to her operation in the first place."

*Id*. ¶ 9.  Dr. Mazzarella also concludes that "[r]emoval of the colon is not the standard of care for

isolated jejunal diverticular bleeding, especially in a fragile, elderly, fluid-overloaded patient who

is prone to bleeding from hemodilution."  *Id.*  He ultimately concludes that the excision of the

decedent's bowel was unnecessary.  *Id*. ¶ 15.  Dr. Mazzarella also questions the need for Dr.

Matthews to perform debridements, noting that "[i]t is unclear why so many returns to the OR

were undertaken by Dr. Matthews . . . ."  *Id*. ¶ 13.  He also notes that performing unnecessary

debridement of ulcers can lead to bacteremia, sepsis, and death in elderly patients.  *Id*. ¶ 16.

 Dr. Mazzarella also states, "I am aware that this patient was subsequently transferred in a

debilitated state to a Long-Term Care facility in Sacramento where she died a short while later

/////

---

     [8]  Plaintiff's pro se status does not excuse her failure to submit Dr. Mazzarella's
declaration with her oppositions.  This case was before the court on May 18, 2016, for hearing on
former defendants Eva Lew and Mark Avdalovic's motion for summary judgment.  ECF No. 503;
*see also* ECF No. 481.  At the hearing, the court addressed plaintiff's burden on summary
judgment and specifically admonished her that she could not succeed on her medical negligence
claim absent expert evidence.  Although the wrongful death claim against Lew and Avdalovic
was disposed by stipulation (ECF No. 545), plaintiff has been given notice of the necessity to
submit expert evidence in opposition to summary judgment.

     [9]  Dr. Mazzarella's declaration is critical of Enloe in general, and is not confined to the
specific treatment of the decedent.  *See* ECF No.435-5 ¶ 14 ("From 2005-2007 I worked at Enloe
Medical Center as a Trauma Surgeon, Vascular Surgeon, Emergency General Surgeon, and
Intensivist.") ("It is my opinion that the Vietnam-era practice has been institutionalized at Enloe
Medical Center and continues to cause extensive damage to the patients at this facility.").

10

. . . . I think the death of this patient was largely iatrogenic, due to a serious lack of knowledge of current medical standards on the part of the treating physicians/institution." *Id*. ¶¶ 18-18.

Dr. Mazzarell's declaration expressly states that Dr. Matthews breached the standard of care by performing unnecessary procedures. But conspicuously missing from the declaration is an opinion that Dr. Matthews's breach was a cause-in-fact of the decedent's death. As stated above, "causation must be proven within a reasonable medical probability based on competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case." *Bromme v. Pavitt*, 5 Cal. App. 4th at 1502. Dr. Mazzarell's declaration is critical of various aspects of the care the decedent received at Enloe, including the care provided by Dr. Matthews, and although Mazzarella ultimately concludes that the decedent's death "was largely iatrogenic," he simply fails to provide any opinion as to whether Dr. Matthews's treatment caused, or even contributed to, the decedent's death. Accordingly, it fails to establish a genuine dispute over the material issue of fact of whether Dr. Matthews's alleged breach of the applicable standard of care caused the decedent's death. For that reason, Dr. Matthews and Enloe are entitled to summary judgment on plaintiff's wrongful death claim.

IV.    Conclusion

Accordingly, it is hereby RECOMMENDED that:

1. Defendant Matthews and Enloe's motion for summary judgment (ECF No. 554) be granted; and

2. The Clerk be directed to enter judgment in defendants' favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

/////

/////

/////

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 12, 2017.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE